**In re James B. McNALLEN, Debtor.**

**Bankruptcy No. 93–14028–T.**

United States Bankruptcy Court, E.D. Virginia, Alexandria Division.

June 27, 1995.

See also: 62 F.3d 619.

John Rosenberg, Alexandria, Virginia, for Debtor.

Robert R. Vieth, Lawrence E. Rifken, Mc-Lean, Virginia, for Mrs. Hagan.

Robert G. Mayer, Chapter 7 Trustee, Fairfax, Virginia.

### MEMORANDUM OPINION

DOUGLAS O. TICE, Jr., Bankruptcy Judge.

Hearing was held May 17, 1995, on the motion of Patricia McNallen Hagan, as attorney-in-fact for Sallie Lou McNallen ("Mrs. McNallen") and Managing Trustee of the G.B. and Sallie McNallen Trust, to reconvert this case to chapter 7 pursuant to 11 U.S.C. § 1112(b), and upon the motion of the chapter 7 trustee to approve the sale of certain assets and compromise certain claims. At the conclusion of the hearing, the court ruled from the bench in favor of Mrs. Hagan and the trustee, and entered orders granting both motions. This memorandum opinion supplements the court's prior bench ruling.

### FINDINGS OF FACT

Debtor James B. McNallen is the son of Mrs. McNallen and the brother of Mrs. Hagan. Hagan is the managing trustee under two trust agreements made by G.B. McNallen (now deceased) and Mrs. McNallen (col-

lectively, the "family trust"). Mrs. McNallen, an eighty-six year old woman, lives in a retirement home in Austin, Texas, and suffers from dementia. Mrs. McNallen has a beneficial life estate in the family trust, and upon her death the assets pass to her living children. Mrs. McNallen has five children: (1) G.R. ("Bob") McNallen, (2) T.R. ("Tom") McNallen, (3) David McNallen, (4) debtor, and (5) Mrs. Hagan. Accordingly, debtor has a contingent one-fifth beneficial interest in the family trust.

Debtor also has a one-fifth interest in the McNallen Enterprises (the "family partnership") that is currently in dissolution. The family partnership owns largely unimproved real estate in Clay County, Texas, and a small amount of cash. Pursuant to the partnership agreement, debtor does not have the right to vote or participate in most managerial decisions with respect to the family partnership.

Debtor and Hagan disagree over certain family matters, including the nature of the care that should be provided to Mrs. McNallen. Because Hagan felt that various actions of debtor were injurious to Mrs. McNallen, Hagan sued debtor in a state court in Texas to restrain his conduct toward Mrs. McNallen, and to recover damages under theories of invasion of privacy and infliction of emotional distress.

In the Texas litigation, debtor counterclaimed against Mrs. Hagan claiming that she had mismanaged the family trust and had engaged in self-dealing. On all of debtor's counterclaims against Hagan, the Texas court granted summary judgment in favor of Hagan. In June 1993 the tort claims went to trial for seven days. The jury awarded Hagan, as attorney-in-fact for Mrs. McNallen, $5,583.00 in actual damages and $100,000.00 in punitive damages against debtor. The jury also awarded Hagan $133,400.00 for the attorneys' fees she incurred defending debtor's claims against her as managing trustee of the family trust. The jury also assessed against debtor $33,300.00 and $1,142.76 in attorneys' fees expended in defending the advisory trustees of the family trust against claims by debtor. Hagan's request for injunctive relief against debtor was also granted.

On September 28, 1993, shortly after the jury verdicts, debtor filed a chapter 7 petition.

According to debtor's schedules and statement of financial affairs, debtor is insolvent and has no assets available for distribution to creditors. In his schedules debtor listed his interest in the family partnership as an asset and valued it at $1.00.[1] In his original schedules debtor did not disclose his contingent interest in the family trust and affirmatively stated that he did not have any "[c]ontingent and non-contingent interest in estate of a decedent, death benefit plan, life insurance policy, or trust." On November 15, 1993, debtor amended his schedule of assets to disclose his interest in the family trust which he valued at $0.00. At the same time debtor referenced his one-fifth interest in the family partnership and valued it as "unknown."

Hagan has filed proofs of claim on obligations arising out of the state court litigation. The claims are:

| | |
|---|---|
| Claim # 5 | $105,583.00 |
| Claim # 6 | $ 1,142.76 |
| Claim # 7 | $133,400.00 |
| Claim # 8 | $ 33,300.00 |
| Claim # 9 | $ 5,103.75 |
| TOTAL | $278,529.51 |

Hagan is the largest unsecured creditor, and she controls the class of unsecured creditors.

On December 22, 1993, Hagan, as attorney-in-fact for Mrs. McNallen and managing trustee of the family trust, filed a complaint against debtor seeking to have the verdict based on the tort claims (proof of claim # 5) declared non-dischargeable pursuant to 11 U.S.C. § 523(a)(6), and seeking to have the debtor's discharge denied pursuant to 11 U.S.C. § 727(a)(2) for his alleged misrepresentations and omissions in his schedules of assets.

In his answer to this complaint, debtor described his dispute with Hagan as "inter-

1. Debtor made these representations regarding his interest in the family partnership despite debtor's representation in a July 12, 1993, letter to family members that he believed his interest was worth at least $29,852.00, as of December 31, 1992.

family warfare." Also, in his answer to the complaint, debtor made the following representations with regard to his interest in the family partnership and the family trust:

> The debtor has made attempts to sell his family partnership interest in the past, however his sister and brothers have blocked him. The debtor indicated to his [bankruptcy] trustee at his meeting of creditors that he feels this partnership interest has no value. However, if the trustee is able to obtain an accurate appraisal and evaluation, and sell this asset for the benefit of his creditors, the debtor would be grateful to his Trustee and the Court.

> The debtor's interest in his family trust is remotely contingent. He discussed it freely and openly with the trustee at his meeting of creditors, and had intended its inclusion in his initial filing. By virtue of his sister's malfeasance, he feels the possibility of his ever receiving any monies from his one-fifth interest in this trust is negligible.

On May 24, 1994, this court granted partial summary judgment in favor of Hagan. The district court affirmed that ruling, which is currently on appeal to the United States Court of Appeals for the Fourth Circuit.

In the summer of 1994, debtor tried to persuade the trustee to abandon debtor's interest in the family trust and the related Texas litigation so that debtor would have standing to continue to assert claims relating to the family trust in that litigation. Debtor represented to the trustee that he "is dedicated with his entire soul to continue pursuing the actions against his brothers and sister in Texas"; that "[t]here is no amount of monies that could be offered by Ms. Hagan that would not be objectionable to" by debtor; and that most of the family dispute "has to deal with issues other than money." After investigating the nature and merit of debtor's claims in Texas, the trustee declined to abandon them.

On September 7, 1994, debtor filed a motion to compel trustee to abandon the estate's interest in the state court litigation so debtor could pursue that litigation on his own. This court denied the motion on October 19, 1994.

On March 27, 1995, the trustee filed a motion to sell certain assets and compromise certain claims in accordance with an agreement reached between Hagan and the trustee. The terms of the agreement are essentially as follows:

a. The family partnership will purchase the estate's one-fifth interest in the family partnership from the estate for $12,664.95 cash;

b. Hagan will withdraw Claim # 6 ($1,142.76) and Claim # 9 ($5,103.75);

c. The compensatory damages portion ($5,583.00) of the intentional tort debt (Claim # 5) will be entitled to distribution under § 726(a)(2)(A), and the punitive damages portion ($100,000.00) will be entitled to distribution under § 726(a)(4) [a class in which no distribution is anticipated].

d. Claim # 7 ($133,400.00) and Claim # 8 ($33,300.00) will be offset against the estate's contingent interest in the family trust, and the estate will assign its interest in the family trust back to the family trust.

After considering all the relevant facts, the trustee determined that the agreement was in the best interests of the estate and its creditors.

Debtor objected to the agreement, alleging that the estate is not receiving sufficient consideration for its interest in the family trust and the family partnership.

Two days prior to the hearing on the trustee's motion to approve the agreement, debtor filed a motion to convert his bankruptcy case from chapter 7 to chapter 11 pursuant to 11 U.S.C. § 706(a). Because debtor could, as a matter of right, convert the case under the given circumstances, the court granted the motion.

Subsequent to filing his bankruptcy, debtor voluntarily retired, and is currently a first-year law student at the University of Connecticut. Debtor testified that he is attending law school, in part, to facilitate his pursuit of litigation against his family members in Texas. Debtor is not currently employed. Debtor has taken out and intends to continue taking out loans in the approximate amount of $17,000.00 per year to attend law school.

Consequently, at the conclusion of law school, debtor will be sixty-eight years old and will have additional debt in the approximate principal amount of $51,000.00.

Debtor has three sources of retirement income: the American Petroleum Institute, the military, and the civil service. In addition, debtor receives social security income. Debtor estimates that his approximate monthly income from these sources is $4,290.00.

Debtor also has current expenses (excluding repayment of the loan described above) in the approximate monthly amount of $3,890.00. One of the principal monthly expenses is for legal fees, which relate to the litigation with family members in Texas and in this court. Debtor asserts, based on his analysis of monthly income and expenses, that he would only be able to make payments of approximately $400.00 per month to a chapter 11 plan.

The court also received into evidence accountings of the family trust that had been approved by the state court in Texas. These accountings show that the trusts are being depleted rapidly, primarily due to legal fees related to litigation with debtor. The family trust is currently valued somewhere between $200,000.00 and $250,000.00.

Debtor is upset that the trustee struck a bargain with debtor's sister, Hagan, and for that reason opposes the trustee's motion. In addition, debtor's motivation in filing the motion to convert to chapter 11 was principally to defeat the approval of the trustee's agreement with Hagan. Debtor is extremely distrustful of his sister and his brothers G.R. McNallen and T.R. McNallen, who collectively manage the trust and the family partnership. Even though there is no evidence of wrongdoing by the trustee or by the managing partners of the family partnership, debtor intends to continue to pursue claims against the trustees and managing partners, regardless of the merits of those claims.

At the May 17, 1995, hearing, the trustee presented a persuasive analysis of claims that indicates that if the agreement is ap-

proved and the trustee is permitted to liquidate assets for distribution to creditors, the eligible unsecured creditors should receive distribution in the approximate amount of 77% of claims.[2] The trustee acted diligently in negotiating a resolution and pursuing a favorable result for the unsecured creditors.

## DISCUSSION AND CONCLUSIONS OF LAW

### THE MOTION TO RECONVERT

Section 706(a) of the Bankruptcy Code states in relevant part that:

> The debtor may convert a case under this chapter to a case under chapter 11 ... of this title at any time, if the case has not been converted under section 1112 ... of this title. Any waiver of the right to convert a case under this subsection is unenforceable.

11 U.S.C. § 706(a). The Fourth Circuit has interpreted § 706, in light of its legislative history, as providing bankruptcy debtors a one-time right to convert their bankruptcy case from chapter 7 to chapter 11. *Finney v. Smith (In re Finney)*, 992 F.2d 43, 44 (4th Cir.1993). The rationale for readily granting conversion under § 706 is to encourage debtors to repay their debts; however, Congress did not intend to allow or condone abuse of the bankruptcy process. *See In re Starkey*, 179 B.R. 687, 694 (Bankr.N.D.Okla.1995) ("Congress did not intend to encourage abuse of process.... This Court will grant conversion under § 706(a) readily—but not so readily as to allow and condone abuse."). Once a debtor converts from chapter 7 to chapter 11, the debtor has no right to "remain" in chapter 11. *In re Finney*, 992 F.2d at 45.

Section 1112(b) of the Bankruptcy Code provides in relevant part:

> [O]n request of a party in interest ..., and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title ... for cause, including

---

2. The only assets available for liquidation and distribution to creditors are: (1) the estate's in-

terest in the family trust and (2) the estate's interest in the family partnership.

(1) continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation;

(2) inability to effectuate a plan;

(3) unreasonable delay by the debtor that is prejudicial to creditors; . . .

11 U.S.C. § 1112(b). In *Carolin Corp. v. Miller*, 886 F.2d 693 (4th Cir.1989), the Fourth Circuit interpreted § 1112(b) as setting forth a non-exhaustive list of circumstances when conversion or dismissal of a case might be appropriate, and held that the broad language of § 1112(b) supports the proposition that a debtor's lack of "good faith" may itself constitute cause for conversion or dismissal.

■ In *Carolin Corp.*, the court held that the standard for dismissal under § 1112(b) for lack of good faith is a two-pronged inquiry: (1) subjective bad faith on the part of the debtor, and (2) objective futility as to reorganization. *See Carolin Corp.*, 886 F.2d at 700–01. Moreover, the court indicated that proof of subjective bad faith and objective futility will inevitably overlap, and overwhelming evidence of one may tend to prove the other. *Carolin Corp.*, 886 F.2d at 701. In fact, the Fourth Circuit in *Carolin Corp.* noted that:

> We do not rule out the possibility that in a given case proof of the objective futility of a proposed reorganization might be so overwhelming that it would support a parallel finding of subjective bad faith despite the lack of any other evidence more directly probative of petitioner's motive. In some situations futility may be so obvious that the only rational inference to be drawn is that petitioner had to be aware of it, hence not to have intended to reorganize but only to delay and harass. Even so, to insure disciplined application of the test and maintain its stringency, bankruptcy courts should make and report findings as to both futility and bad faith notwithstanding the same evidence is thought to establish both.

*Carolin Corp.*, 886 F.2d at 701 n. 3.

■ The same two-pronged inquiry applies whether the remedy sought is dismissal of a chapter 11 petition, or reconversion to chapter 7 as in this case. *See In re Finney*, 992 F.2d at 45. Accordingly, in this case debtor's bankruptcy must be reconverted to chapter 7 if debtor's conversion to chapter 11 was in bad faith, and if reorganization under chapter 11 is objectively futile.

*Subjective Bad Faith*

■ The court concludes that debtor filed the motion to convert in bad faith. Debtor has no legitimate desire to repay his creditors. To the contrary, his desire is to thwart the trustee's agreement with Hagan and to pursue claims of dubious merit against Hagan and perhaps other family members. The clear futility of any chapter 11 plan by debtor also persuades the court that debtor has no genuine motivation to repay his creditors.

Debtor's bad faith appears to be a product of his long-running dispute with his sister and brothers. Debtor has been engaged in bitter conflict for several years that even the Debtor describes as "inter-family warfare." This court has already ruled that debtor's obligations arising in the state court litigation are non-dischargeable pursuant to § 523(a)(6).

More importantly, debtor's bad faith is evidenced by his contradictory statements regarding the estate's interest in the family trust and family partnership. In his original schedules debtor failed to disclose his interest in the family trust. Not until after the meeting of creditors did debtor amend his schedules to reflect his contingent interest in the family trust. Debtor also obfuscated the estate's interest in the family partnership. The evidence shows that shortly before the time debtor filed his original schedules, debtor had written a letter stating his opinion that his interest in the family partnership was worth $29,852.00; yet he scheduled this asset as having a $1.00 value. Later debtor restated the value of the estate's interest in the family partnership as "unknown."

In his answer to Hagan's complaint, debtor stated again that he believed his interests in the family partnership had no value and stated that he would be "grateful" to the trustee if he could sell this asset for the benefit of his creditors. Likewise, debtor restated his

opinion that his interest in the family trust was "remote" and "negligible."

In spite of debtor's continuous assertion that these interests have minimal value, debtor now claims they have substantial value and believes the trustee is not receiving sufficient value.

Upon consideration of all the evidence, it is clear that debtor's motivation in converting his case to chapter 11 was to thwart the trustee's efforts to sell the estate's interest in the family trust and family partnership and to maintain some legal capacity to continue to pursue litigation against certain members of his family.

In *Finney*, the debtor moved to convert his case to chapter 11 only after his discharge was denied for engaging in recalcitrant and fraudulent conduct. *In re Finney*, 992 F.2d at 44. The Fourth Circuit found this to constitute subjective bad faith and abuse of the bankruptcy process. *In re Finney*, 992 F.2d at 45 (citing *Carolin Corporation*, 886 F.2d at 702 ("[t]he subjective bad faith inquiry is designed to … determine whether the petitioner's real motivation is 'to abuse the reorganization process.' ")). Likewise, in this case debtor has resorted to converting his case to chapter 11 as a last-ditch effort to foil the trustee's efforts and to perpetuate his personal vendetta against his family members, in particular Hagan.

Accordingly, the court finds that debtor's conversion of his bankruptcy case to chapter 11 was in bad faith which constitutes an abuse of the bankruptcy process.

*Objective Futility*

█ The evidence of subjective bad faith is so clear and overwhelming that it tends to prove the objective futility of debtor's attempt to proceed under chapter 11. *See Carolin Corporation v. Miller*, 886 F.2d at 701 n. 3. Furthermore, objective futility is evidenced by debtor's schedules and his current financial situation.

In debtor's schedules he lists total assets of $208,790.00, and total liabilities of $1,138,788.00. Of the $208,790.00 in assets, $205,000.00 is listed as real property which has been abandoned to respective mortgagees. Debtor's remaining assets consist of $3,790.00 of personal property all of which debtor claims as exempt.

Debtor is an unemployed first-year law student and has no realistic ability to fund a plan of reorganization, even if one assumes that he could satisfy the "cram down" requirements of 11 U.S.C. § 1129(b).

To the extent debtor envisions a plan of liquidation, the trustee has essentially proposed such a plan through the agreement which happens to be acceptable to Hagan (the primary unsecured creditor who controls the class of unsecured creditors) and which should provide a substantial distribution to unsecured creditors.

Accordingly, the court concludes that any attempt by the debtor to proceed under chapter 11 is objectively futile and is not in the best interests of the estate.

*MOTION TO SELL PROPERTY*

█ The bankruptcy court has broad discretion in deciding whether to approve a proposed sale of the debtor's assets. *See In re WPRV–TV, Inc.*, 983 F.2d 336, 340 (1st Cir.1993); *In re Blue Coal Corp.*, 168 B.R. 553, 560 (Bankr.M.D.Pa.1994). Although the trustee has the initial burden of proof with regard to compromising claims, the ultimate inquiry is whether the compromise is in the best interests of the estate. *See In re Hanson Indus., Inc.*, 88 B.R. 942, 945–46 (Bankr. D.Minn.1988); *In re Mobile Air Drilling Co.*, 53 B.R. 605, 607–08 (Bankr.N.D.Ohio 1985).

█ In this case the trustee's agreement involves both a sale of assets and the compromise of claims. Accordingly, the agreement must be evaluated as a whole in determining whether it is in the best interests of the estate. *See In re NEPSCO, Inc.*, 36 B.R. 25, 27–28 (Bankr.D.Me.1983).

█ Essentially, the agreement proposes to transfer the estate's interest in the family trust and the family partnership in exchange for $12,664.95 cash and the resolution of $272,946.51 worth of claims against the estate. Therefore, the agreement will result in a total economic benefit to the estate of $285,611.46 and will permit eligible unsecured creditors to recover a substantial percentage of the dollar value of their claims.

Debtor's own evidence demonstrates that the value of the interest was less than $150,000.00.[3] The value of the cash received, the claims withdrawn, and the claims setoff against the estate's interest exceeds debtor's estimated value.[4] Accordingly, the agreement is clearly in the best interests of the estate and will be approved.

Accordingly, for all the reasons stated from the bench on May 17, 1995, and for the reasons in this memorandum opinion, the court has granted Hagan's motion to reconvert this bankruptcy case to chapter 7 and the trustee's motion to sell certain assets and compromise certain claims.

Separate orders have been entered.

---

**3.** It is evident that debtor believes the interests are being sold for $12,664.95. Debtor's view fails to consider the other terms of the agreement which provide a monetary benefit to the estate and unsecured creditors.

**4.** Under this scenario, the agreement has a cash value to the estate of $185,611.46:

| | |
|---|---|
| Cash: | $ 12,664.95 |
| Claims Withdrawn: | 1,142.76 |
| | 5,103.75 |
| Offset Claims: | 133,400.00 |
| | 33,300.00 |
| TOTAL: | $185,611.46 |