**In re Ellen LaFaye MASSIE, Debtor.**

**Bankruptcy No. 98–14781(MVB).**

United States Bankruptcy Court,
E.D. Virginia,
Alexandria Division.

March 26, 1999.

---

## MEMORANDUM OPINION

MARTIN V. B. BOSTETTER,
Bankruptcy Judge.

Here we deal with the issue before the Court of debtor Ellen LaFaye Massie's motion to dismiss her Chapter 12 case and William P. Bock's motion to convert debtor's case to Chapter 7. Having heard arguments and evidence, the matter was taken under advisement. For the following reasons, we find Bock failed to meet his burden in proving that debtor committed fraud in filing her Chapter 12 petition. Accordingly, we decline to convert debtor's Chapter 12 case to Chapter 7 pursuant to 11 U.S.C. § 1208(d).

However, the evidence does demonstrate debtor filed her petition in bad faith with the intent to delay her creditors. The Court therefore dismisses debtor's case under 11 U.S.C. § 1208(b) with prejudice, not to re-file for 180 days as required by 11 U.S.C. § 109(g). The Court further directs debtor to pay Bock's reasonable attorneys' fees and costs arising from the filing of this petition.

The Court possesses jurisdiction over the parties and subject matter of this core proceeding pursuant to 28 U.S.C. §§ 157(a), (b)(1) and 1334(b). Venue is proper by 28 U.S.C. § 1409(a).

Ellen LaFaye Massie (hereinafter "debtor") filed her pro se Chapter 12 petition on June 25, 1998 at approximately 8:30 am,

hours before trial began in an appeal in Fairfax County Circuit Court on William P. Bock's (hereinafter "Bock") unlawful detainer action. Debtor sought to stop Bock's possession of Briary Farm, debtor's mother's property located in Alexandria, Virginia. Debtor's mother, Ellen Parker Harrelson, has been in bankruptcy since 1994.

This Court previously lifted the automatic stay on Briary Farm in the Harrelson case and permitted a foreclosure sale to take place after denying Harrelson's discharge pursuant to 11 U.S.C. § 727. The Bocks purchased the property at the foreclosure sale. However, debtor and her mother refused to relinquish possession of the property, forcing Bock to file an unlawful detainer action. The circuit court granted Bock a writ of possession of the property. Harrelson appealed the decision, which was stayed when debtor filed the instant Chapter 12 case.

Gerald O'Donnell, the Chapter 12 trustee, filed a motion to dismiss debtor's case on July 13, 1998 on the grounds debtor did not qualify as a "family farmer" to be in Chapter 12. Bock filed a similar motion on July 17, 1998. Debtor filed a motion to convert her case to Chapter 11 on August 3, 1998. The Court continued the August 4th hearing until September 1, 1998. During this time, the Court granted Bock's motion for relief from the automatic stay on August 5, 1998. Debtor subsequently filed a motion to reconsider this decision. Upon debtor's request, the Court again continued all matters from September 1st to September 30th, so that debtor could obtain counsel.

Bock filed a motion to convert debtor's Chapter 12 case to Chapter 7 for fraud on September 1, 1998 pursuant to 11 U.S.C. § 1208(d). On September 29, 1998 the Court granted Bock's expedited motion to continue all matters until December 14th. Debtor withdrew her motion to convert on December 11, 1998 and asked the Court to dismiss her case as a matter of right according to 11 U.S.C. § 1208(b). Debtor again filed a praecipe seeking to dismiss her case on January 28, 1999. The Court finally heard arguments and took evidence on February 1, 1999, and gave parties until March 1, 1999 to file post-hearing briefs. Debtor's long-awaited attorney, Michael E. Ford, also filed a notice of appearance on that date.

■ 11 U.S.C. § 1208(d) permits courts to convert a Chapter 12 case to Chapter 7 upon a showing of fraud, and states:

> On request of a party in interest, and after notice and a hearing, the court may dismiss a case under this chapter or convert a case under this chapter to a case under chapter 7 of this title upon a showing that the debtor has committed fraud in connection with the case.

11 U.S.C. § 1208(d). The burden therefore rests on Bock to prove by a preponderance of the evidence:

(1) that debtor made representations;

(2) that at the time she knew they were false;

(3) that she made them with the intention and purpose of deceiving the creditor;

(4) that he justifiably relied on such representations; and

(5) that he sustained the alleged loss and damages as a proximate result of the representations having been made.

*Grogan v. Garner*, 498 U.S. 279, 287–88, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *Household Fin. Corp. v. Kahler (In re Kahler)*, 187 B.R. 508, 511–12 (Bankr.E.D.Va.1995); *see Metrocall of Delaware, Inc. v. Continental Cellular Corp.*, 246 Va. 365, 437 S.E.2d 189, 193 (1993) (fraud is "an intentional, knowing misrepresentation by a defendant of a material fact upon which a plaintiff has relied to his detriment.").

■ A debtor's intentional concealment of assets and misrepresentations to the court constitute sufficient conduct to support an involuntary conversion for fraud. *In re Reinbold*, 110 B.R. 442 (Bankr.D.S.D.1990), *aff'd, Reinbold v. Dewey County Bank*, 942 F.2d 1304 (8th Cir.1991), *cert. denied*, 503 U.S. 946, 112 S.Ct. 1499, 117 L.Ed.2d 639 (1992) (debtor transferred equipment without lienholder's consent and changed license plates on equipment to disguise transaction); *In re Caldwell*, 101 B.R. 728 (Bankr.D.Utah 1989) (schedules filed by debtor were materially and intentionally misleading); *In re Gra-*

*ven,* 101 B.R. 109 (Bankr.W.D.Mo.1989), *aff'd,* 936 F.2d 378 (8th Cir.1991) (fraud found where debtors made pre-petition transfers of property without consideration to affiliated entities, refused to answer questions about those transactions and filed false schedules).

■ Bock bases his motion to convert on alleged misrepresentations debtor made in filing her petition. He presented several witnesses' testimony purporting to demonstrate the various assets debtor failed to list on her schedules. Bock claims debtor neglected to list several horses, various horse-riding equipment, vehicles, a fur coat, diamond earrings and a diamond tennis bracelet. However, he did not present adequate evidence to show debtor's ownership of any of these items sufficient to support a finding of fraud.

During the hearing, the Court heard testimony from Ms. Lin Marie Barra–Weaver, the owner of the farm where debtor and her boarders moved their horses and equipment from Briary Farm. Ms. Weaver lives in Florida and permitted debtor to use her land in her absence. She testified as an expert witness as to the value of the horses and equipment located on her property, including saddles, bridles, brushes, blankets, mats, jumps and gates, which debtor did not list on her schedules. However, she could not say for sure if the items actually belonged to debtor.

Mr. Bruce Brownson and Ms. Sarah Thompson, boarders at Briary Farm, also testified as to the confusion involved in the move to Ms. Weaver's farm. Neither witness could affirmatively state who owned which horses and what equipment. Nor could any witness substantiate Bock's claim that debtor had a fur coat other than the one listed on her schedules.

Bock also failed to provide any definitive evidence, such as vehicle registration information, as to debtor's ownership of several vehicles. Debtor did admit her daughter drove a blue 1996 Mustang purchased in early 1997 by Mr. Philip Downs, a family friend, on which she made the monthly payments. This transaction occurred over a year prior to debtor's bankruptcy and no evidence was provided as to debtor's fraudulent intent to conceal this as an asset.

Furthermore, Bock alleged that debtor owns a pair of diamond earrings and a diamond tennis bracelet, in addition to the jewelry listed on her schedules. Debtor's mother testified she had given her daughter diamond earrings for her high school graduation over 30 years ago, but she did not know if debtor still had them. Ms. Anne Diamon stated she had seen debtor with a diamond tennis bracelet two and one-half years ago. Debtor claims she no longer has the earrings and that the tennis bracelet was not genuine. Though we do not find debtor's testimony credible, Bock has failed to prove by a preponderance of the evidence the elements of fraud that debtor knowingly misrepresented her assets with the intent to deceive.

■ We do find, however, any discrepancies that may exist between assets owned and those listed on debtor's schedules demonstrate debtor's inexcusable carelessness in filing her petition. *See Citizens Bank & Trust Co. v. Knott (In re Knott),* 32 B.R. 252, 256 (Bankr.E.D.Va.1983) (even though inexcusable, debtor did not intend to defraud creditor in hastily filing a bankruptcy petition in which he omitted to list property). This carelessness does support a finding of debtor's bad faith, despite the fact that courts hold pro se debtors' petitions and schedules to less stringent standards. *Simmons v. Simmons (In re Simmons),* 149 B.R. 586, 589 (Bankr.W.D.Mo.1993); *see Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (courts must liberally construe pro se filings).

Courts have used the same considerations in Chapter 13 cases to determine whether a debtor has filed a Chapter 12 case in bad faith. *In re Walton,* 116 B.R. 536, 540 (Bankr.N.D.Ohio 1990) (citing *In re Wickliffe,* 106 B.R. 470, 473 (Bankr.W.D.Ky.1989); *In re Edwards,* 87 B.R. 671 (Bankr. W.D.Okla.1988)) (stating "[s]ince Chapter 12 was modeled after, and is substantially identical in many respects, to Chapter 13, decisions under Chapter 13 may be looked to in order to predict attitudes of courts to related issues which may arise under Chapter 12.").

The Fourth Circuit in *Carolin Corp. v. Miller,* 886 F.2d 693 (4th Cir.1989) concluded that the Bankruptcy Code necessarily implies a good faith filing requirement in order to prevent debtors' abuse of the bankruptcy process. *Carolin,* 886 F.2d at 698; *In re McNallen,* 197 B.R. 215, 220 (Bankr. E.D.Va.1995); *see* 11 U.S.C. § 105(a). To determine whether debtor has filed her petition in bad faith, this Court must look at the "objective futility of reorganization" along with the "subjective bad faith" of invoking bankruptcy protection. *Carolin Corp.,* 886 F.2d at 700. This requires the Court to look at debtor's motivations in filing her petition to determine whether debtor filed it to abuse the reorganization process, to cause hardship or to delay creditors by invoking the automatic stay without intent or ability to reorganize her financial activities. *Id.* at 701; *In re Burrell,* 148 B.R. 820, 823 (Bankr.E.D.Va. 1992).

The Second Circuit in *C–TC 9th Ave. Partnership v. Norton Co. (In re C–TC 9th Ave. Partnership),* 113 F.3d 1304, 1311 (2d Cir. 1997), listed the following relevant factors a court should consider in determining debtor's motivations:

(1) the debtor only has one asset;

(2) the debtor has few unsecured creditors whose claims are small in relation to those of the secured creditors;

(3) the debtor's one asset is the subject of a foreclosure action as a result of arrearages or default on the debt;

(4) the debtor's financial condition is, in essence, a two party dispute between the debtor and secured creditors which can be resolved in the pending state foreclosure action;

(5) the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights; and

(6) the debtor has little or no cash flow;

In the case at bar, we find debtor's sole purpose in filing her petition was to frustrate the legitimate process of a nonbankruptcy forum. *See In re A.Z. Servs., Inc.,* 208 B.R. 578 (Bankr.S.D.Fla.1997) (court dismissed voluntary petition as the debtor's overriding objecting served to stymie lessor's efforts to regain possession of property); *In re Martin,* 51 B.R. 490, 495 (Bankr.M.D.Fla.1985); *see also In re Island Helicopters, Inc.,* 211 B.R. 453 (Bankr. E.D.N.Y.1997) (sole purpose of debtor's filing was to delay and frustrate termination of a contract that had been the subject of years of litigation).

Debtor has relatively few assets and no income. Based on debtor's schedules, she has listed minimal debt other than the outstanding dispute with the Bocks. She owes $10,000.00 to Crestar Bank on a visa card, $800.00 to Fingerhut and $1,599.00 on a CFS Mastercard and $655.00 on a CFS Visa card. Her financial condition is, in essence, a two-party dispute between her mother and Bock. Objectively, reorganization would be futile, as debtor has nothing to reorganize.

Both the timing and manner of debtor's filing support what she has already admitted to, that she filed her petition to stop Bock's lawful action to seek possession of her mother's property. Debtor filed her petition mere hours before the state court was to hear arguments on Bock's unlawful detainer action. The fact that an eviction from the property would render debtor unable to pay Bock's loan remains secondary to her stated purpose in filing.

In addition, debtor admits to hastily preparing her petition. She filed an incomplete summary of schedules weeks later and failed to file a statement of her financial affairs by the due date. Furthermore, debtor admitted to knowing she did not qualify as a Chapter 12 debtor several times throughout the February hearing. These circumstances clearly support debtor's subjective bad faith in seeking bankruptcy protection.

This Court may award sanctions for bad faith litigation practices, violations of Bankruptcy Rule 9011 and to prevent an abuse of process under 11 U.S.C. § 105(a). *In re Davenport,* 175 B.R. 355, 361–62 (Bankr.E.D.Cal.1994); *see In re Patton,* 209 B.R. 98, 105–06 (Bankr.E.D.Tenn.1997). We therefore require debtor to pay Bock's attorneys' fees under the equitable powers inherent in the Bankruptcy Code due to the additional delay created by debtor's petition and

the increase in his legal expenses in seeking possession of Briary Farm. *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 766–67, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980); *see Tanner's Transfer & Storage of Virginia, Inc. v. Florance (In re Tanner's Transfer & Storage of Virginia, Inc.),* 39 B.R. 835, 838–39 (Bankr.E.D.Va.1984). In the event the parties cannot resolve the issue of attorneys' fees and costs, the Court will hold a further hearing to determine the appropriate amount of this award.

Bankruptcy courts similarly have the authority to issue injunctions to prevent the filing of groundless, vexatious, repetitive, or harassing claims based on both the inherent authority of federal courts and the specific terms of the Bankruptcy Code. *Simmons,* 149 B.R. at 590–91 (in order to allow creditor to complete the foreclosure process in state court, bankruptcy court enjoined debtor from filing for 180 days); *In re Belden,* 144 B.R. 1010, 1023 (Bankr.D.Minn.1992).

Bankruptcy Code section 109(g) states:

(g) Notwithstanding any other provision of this section, no individual or family farmer may be a debtor under this title who has been a debtor in a case pending under this title at any time in the preceding 180 days if –

(1) the case was dismissed by the court for willful failure of the debtor to abide by orders of the court, or to appear before the court in proper prosecution of the case, or

(2) debtor requested and obtained the voluntary dismissal of the case following the filing of a request for relief from the automatic stay provided by section 362 of this title.

11 U.S.C. § 109(g). This section applies in the case at bar. Debtor sought to dismiss her case on December 11, 1998 only after the Court granted Bock relief from the automatic stay on August 5, 1998. We therefore rule that debtor is precluded from re-filing for 180 days from the date of dismissal.

We find Bock has failed to establish debtor's fraud in filing her Chapter 12 petition, and therefore deny his motion to convert under section 1208(d). The evidence does show, however, debtor filed her petition in bad faith. For the foregoing reasons, the Court dismisses debtor's case pursuant to section 1208(b) and directs debtor to pay Bock's attorneys' fees and costs associated with this case. Furthermore, debtor is precluded pursuant to section 109(g) from re-filing any bankruptcy petition for 180 days. The Court will enter a separate order consistent with this opinion.