**In re Carl PERTUSET, Vera Pertuset, Debtors.**

No. 11–15607.

United States Bankruptcy Court, S.D. Ohio, Western Division.

March 5, 2012.

Subsequently affirmed, 485 B.R. 478.

Robert Hansford Hoskins, West Union, OH, for Debtors.

ORDER: (I) DENYING DEBTORS' ORAL MOTION TO CONTINUE CONFIRMATION HEARING; (II) DENYING CONFIRMATION OF PROPOSED PLAN; (III) GRANTING MOTIONS TO DISMISS CASE; (IV) APPLYING TWO YEAR BAR TO REFILING; (V) DENYING MOTION FOR RELIEF FROM STAY AND MOTION FOR ADEQUATE PROTECTION AS MOOT; AND, (VI) GRANTING MOTION TO WITHDRAW AS COUNSEL

BETH A. BUCHANAN, Bankruptcy Judge.

In this—the debtors' second chapter 12 case—the Court is called upon to strike a balance between giving the debtors sufficient opportunity to confirm a plan of reorganization to keep their family farm and preserving the fair treatment of creditors and the integrity of the bankruptcy process. At the confirmation hearing, the debtors requested a continuance of the confirmation hearing with the goal of filing a revised plan in keeping with certain jurisdictional, standing and securitization theories espoused by the debtors as to why the debtors are not obligated to pay certain—if not all—claims of their creditors. The debtors' creditors and the chapter 12 trustee adamantly oppose any continuance of the confirmation hearing. The creditors further ask this Court to dismiss this case with prejudice to refiling for a period of two years. Weighing the record as a whole and considering the objectives of chapter 12 of the Bankruptcy Code, this Court finds that the scale tips in favor of denying the debtors' request to continue the confirmation hearing in order to file a revised plan and granting the motions to dismiss this case with a two year restriction on refiling.

## I. Background And Procedural History

### A. Matters Before This Court

This Chapter 12 case is before this Court on the following matters:

1. Confirmation of the Debtors' *Plan of Reorganization* [Docket Number 61] (the *"Proposed Plan"*), the *Objection to Confirmation by the Chapter 12 Trustee* [Docket Number 86], the *Objection to Confirmation of Chapter 12 Plan by Farm Credit Services of Mid–America and Rejection of All Plans Filed by the Debtors* [Docket Number 100], the *Objection of American Savings Bank to Chapter 12 Plan* [Docket Number 105], the *Objection to Confirmation of Chapter 13* (sic) *Plan* [Docket Number 106, amended at Docket Number 108 to reflect Chapter 12 in the title] filed by Quality Car, and the *Objection to Confirmation of Chapter 13* (sic) *Plan* [Docket Number 107, amended at Docket Number 109 to reflect Chapter 12 in the title] filed by Ohio Valley Resource Conservation and Development;

2. *Motion for Adequate Protection* [Docket Number 15] (the *"Quality Car Motion for Adequate Protection"*)filed by Quality Car & Truck Leasing (*"Quality Car"*)and the Response to Motion for Adequate Protection Payments [Docket Number 15];

3. *Motion of American Savings Bank for Relief from the Automatic Stay* [Docket Number 38] (the *"ASB Motion for Relief from Stay"*)filed by American Savings Bank, FSB (*"ASB"*);

4. *Motion of American Savings Bank, FSB to Dismiss* [Docket Number 42] (the *"ASB Motion to Dismiss"*), the Response to Motion to Dismiss [Docket Number 48] filed by the Debtors, and the Joinder of Quality Car & Truck Leasing in Motion to Dismiss [Docket Number 53] (the *"Quality Car Joinder"*); and,

5. Motion to Withdraw as Legal Counsel for Debtors [Docket Number 89] (the *"Motion to Withdraw as Counsel"*).

A hearing on the foregoing matters was held on January 25, 2011 (the *"Confirmation Hearing"*).At the Confirmation Hearing, Farm Credit Services of Mid–America (*"Farm Credit Services"*)orally moved to dismiss this case with a two year bar to refiling (the *"Farm Credit Services Motion to Dismiss,"* and together with the ASB Motion to Dismiss and the Quality Car Joinder, the *"Motions to Dismiss"*)and the Debtors orally moved to continue the Confirmation Hearing in order to file a revised plan (the *"Motion to Continue the Confirmation Hearing"*).

### B. Debtors' First Chapter 12 Case

This is the Debtors' second Chapter 12 case before this Court. A brief summary of the Debtors' first Chapter 12 case is appropriate as it lends context to the matters before the Court in this proceeding.

The Debtors' initial Chapter 12 petition was filed on November 16, 2009. *Voluntary Petition* [Case No. 09–17636, Docket Number 1]. On January 19, 2010, the Debtors—through their counsel, George Leicht—filed a motion to voluntarily dismiss their Chapter 12 case. *Debtors' Amended Application to Dismiss Chapter 12 Case* [Case No. 09–17636, Docket Number 26]. On February 1, 2010, the Debtors—*pro se*—filed a withdrawal of the motion to dismiss and notice of termination of counsel. *Notice of Mistake and Notice of Withdrawal of Motion to Voluntarily Dismiss Bankruptcy, Notice of Termination of Counsel* [Case No. 09–17636, Docket Number 36]. Two days later, Attorney Leicht filed a motion to withdraw as counsel, which the Bankruptcy Court granted on February 19, 2010. [Case No. 09–17636, Docket Numbers 34 and 45].

The Debtors thereafter filed various *pro se* filings relating to a multi-billion dollar maritime judgment lien assigned for the benefit of creditors, in which the Debtors' claimed to have been assigned a partial interest valued at $1,750,000. *See Pertuset v. American Savs. Bank, FSB (In re Pertuset)*, 438 B.R. 354, 2010 WL 3422455, at *3 (6th Cir. BAP 2010). The Debtors sought to have the Chapter 12 trustee liquidate this asset and pay all creditors in full. *Letter dated February 22, 2010 from Debtor Carl Pertuset to Chapter 12 Trustee, Steven Fansler* [Case No. 09–17636, Docket Number 52]. The Chapter 12 trustee filed a response asking the Court to "make a determination that the trustee is not being remiss in his duties by not yet pursuing collection of an assignment of creditors which does not appear to be properly established, liquidated, or non-contingent." *Response of Standing Chapter 12 Trustee to "Assignment of Maritime Judgment Lien" Pleading of Debtors* [Case No. 09–17636, Docket Number 75].

In the interim, creditor ASB filed a motion to dismiss the case for cause, pursuant to Section 1208 of the Bankruptcy Code,[1] based on gross mismanagement of the estate, failure to file a plan timely, continuing diminution of the estate, absence of a reasonable likelihood of rehabilitation and failure to satisfy the requirements for filing a case under Chapter 12 as set forth in Section 109(f) of the Bankruptcy Code.

*Motion of American Savings Bank, FSB to Dismiss* [Case No. 09–17636, Docket Number 54]. The Debtors opposed the motion to dismiss alleging that the Debtors had purchase money contracts with the Clerk of Courts[2] and the Chapter 12 trustee[3] to administer the maritime lien and pay the claims of creditors in full. *Response to Motion to Dismiss and Demand for Discharge of Claim by Operation of Law, Claim for Honest Government Services* [Case No. 09–17636, Docket Number 72].

On April 7, 2010, the Debtors filed a "Notice of Mistake," which purported to set forth the Debtors' proposed Chapter 12 plan for payment of creditors to be funded by liquidation of the partial assignment of the maritime lien. *In re Pertuset*, 438 B.R. 354, 2010 WL 3422455 at *3.

The Bankruptcy Court dismissed the Debtors' Chapter 12 case on April 9, 2010 based on the Debtors' failure to timely file a plan as required by Section 1221 of the Bankruptcy Code and continuing loss to the estate and no reasonable likelihood for rehabilitation. *Order Granting Motion to Dismiss Case* [Case No. 09–17636, Docket Number 79]. The Debtors appealed the Bankruptcy Court's dismissal of the case. *Notice of Appeal* [Case No. 09–17636, Docket Number 83]. On August 24, 2010, the Bankruptcy Appellate Panel for the Sixth Circuit affirmed the Bankruptcy

---

**1.** References to the *"Bankruptcy Code"* are to Title 11 of the United States Code, 11 U.S.C. § 101 *et seq.*, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. No. 109–8.

**2.** "Debtors paid all fees required in filing [their voluntary petition], ($239.00) thereby making a purchase money agreement with the Clerk of Court for the honest government services as provided in the Court's advertisements commonly known as the Federal Bankruptcy Rules, wherein, equal protection under

the law as well as equal administration of the law is stated as 'the purpose of the Court.'" [Case No. 09–17636, Docket Number 72 at ¶ 2].

**3.** "Debtors, at the requirement of the Trustee for the Trustee's fee, paid $500.00 as a purchase money contract for Trustee's services in this matter for the express purpose of handling the affairs of the bankruptcy estate." [Case No. 09–17636, Docket Number 72 at ¶ 3].

Court's decision. *In re Pertuset*, 438 B.R. 354, 2010 WL 3422455 at *4–5.

### C. Current Chapter 12 Proceeding

The Debtors, through their bankruptcy counsel, Robert Hoskins, filed this Chapter 12 bankruptcy case on September 14, 2011.

### 1. Quality Car's Motion For Relief From Stay And Motion For Adequate Protection

On September 21, 2011, Quality Car filed a *Motion for Relief from Stay* [Docket Number 11] and the Quality Car Motion for Adequate Protection relating to multiple pieces of personal property used by the Debtors in their farming operation. A hearing was held on October 6, 2011 on both matters, at which the Debtors and Quality Car resolved the Motion for Relief from Stay. Docket Number 36. Pursuant to various stipulations and orders of this Court, the Quality Car Motion for Adequate Protection was continued to January 25, 2012 for further evidentiary proceedings as relates to valuation of the Quality Car collateral. Docket Number 78.

### 2. ASB's Motion for Relief from Stay and Motion to Dismiss

On October 31, 2011, ASB filed its Motion for Relief from Stay as to certain real property owned by the Debtors' (the *"Real Property Collateral"*)on the grounds that ASB's interest in the Real Property Collateral is not adequately protected since no payments have been made on the loans since 2009, the Debtors have no equity in the Real Property Collateral and it is not necessary for an effective reorganization. ASB also filed its Motion to Dismiss asserting that this case should be dismissed "for cause," on the grounds of gross mis-

management by the Debtors which is prejudicial to their creditors, continuing loss to the estate, and the absence of a reasonable likelihood of rehabilitation.

An evidentiary hearing on the ASB Motion for Relief from Stay and the ASB Motion to Dismiss was held on November 29, 2011 (the *"November 29, 2011 Hearing"*).ASB raised two new issues at the November 29, 2011 Hearing relating to lack of insurance on the Real Property Collateral[4] and the Debtors' eligibility to be debtors under Chapter 12 of the Bankruptcy Code as additional grounds in support of their motions. ASB also orally requested some form of adequate protection as relates to insurance of the Real Property Collateral if relief from stay was not granted.

The Debtors opposed the ASB Motion for Relief from Stay and the ASB Motion to Dismiss, arguing that the motions were premature since the Debtors' Chapter 12 plan was not yet due and any determination regarding the viability of this case should be based on the Debtors' proposed plan. In addition, the Debtors raised an issue as to whether ASB was the real party in interest entitled to assert claims in this bankruptcy case. Specifically, it was the Debtors' belief the ASB may have sold the mortgage notes through various securitizations and, as such, may not be the proper party in interest.

Representations were made to this Court at the November 29, 2011 Hearing by Debtor Carl Pertuset and Attorney Hoskins that the Debtors had insurance coverage for ASB's Real Property Collateral and that the Debtors would be able to provide evidence of such coverage to ASB. With respect to the issue of the Debtors'

---

**4.** ASB stated that the only insurance on the Real Property Collateral is that which ASB

had force-placed on the properties.

eligibility to be debtors in Chapter 12 based on the Debtors' historic gross income figures, Debtor Carl Pertuset testified to his general belief that the Debtors' historic income figures were sufficient to qualify for Chapter 12 debtor status if the gross income from farming operations of the Debtors' now dissolved limited liability company were taken into account. Debtors' counsel advised this Court at the November 29, 2011 Hearing that the Debtors were amending their 2010 personal tax returns to account for the limited liability company income from farming operations and believed that this amendment would establish that the Debtors meet the requisite gross income figures required by Sections 109(f) and 101(18)(A) of the Bankruptcy Code to qualify as debtors under Chapter 12 of the Bankruptcy Code. Debtors' counsel further agreed that the Debtors would make conforming amendments to their Statement of Financial Affairs.

Based on these representations, this Court issued its *Order to File Supplemental Documentation in Connection with Hearing on American Savings Bank, FSB's Motion to Dismiss and Motion for Relief from Stay* [Docket Number 55] (the *"First Supplemental Order"*). Pursuant to the First Supplemental Order, the Debtors were required to file copies of the declarations pages for the current insurance policies on ASB's Real Property Collateral by December 2, 2011.[5] In addition, the Debtors were required to file their amended 2010 personal tax returns and their amended Statement of Financial Affairs with this Court on or before December 9, 2011.

The Debtors failed to fully comply with the First Supplemental Order with respect to proof of insurance for ASB's Real Property Collateral. On December 2, 2011, the

Debtors filed a *Notice of Filing of Insurance.* Docket Number 57. The only proof of insurance attached to the *Notice of Filing Insurance* related to the property located at 82 Jacquays Run, McDermott, Ohio 45652 and was a one page copy of the insurance binder. With respect to the property located at 17033 State Route 73, McDermott, Ohio 45652, the Debtors stated that this property was leased and the tenant maintained insurance on the property. The Debtors indicated that they were working to obtain a copy of this insurance policy from the tenant. As to the property located at 2451 McDermott Pond Creek, the Debtors stated that they were looking for the insurance policy for this property and if there was no insurance for this property, the Debtors would timely obtain insurance.

ASB filed a *Response to Notice of Filing Insurance* [Docket Number 59] pointing out that the copy of the insurance binder for the property at 82 Jacquays Run did not indicate whether ASB was listed as the loss payee as required by the mortgage. Further, as to the property at 17033 State Route 73, ASB noted that it was the Debtors', and not the tenant's, responsibility to keep the property insured against loss pursuant to the terms of the mortgage. ASB similarly took issue with the Debtors' inability to find a copy of the policy for the property at 2451 McDermott Pond Creek.

The Debtors likewise failed to fully comply with the terms of the First Supplemental Order with respect to proof of historic gross income. On December 12, 2012, the Debtors filed an untimely response to the First Supplemental Order indicating that the Debtors were not revising their 2010 personal tax return nor was there a need to amend their Statement of Financial Af-

---

5. The Debtors also were required to file declaration pages for the personal property secur-

ing Quality Car's loans, which the Debtors failed to do.

fairs. Docket Number 60. The Debtors added a conclusory statement that "their farm revenue for 2009 was $196,021 and $82,599 in 2010 [and as] discussed at the recent hearing by [Debtors'] counsel, the Pertusets gross farm revenues far exceed Mr. Pertusets partial disability income." *Id.*

As was made clear at the November 29, 2011 Hearing, the reason that this Court issued the First Supplemental Order requiring supplemental documentation with respect to insurance and eligibility to be a debtor in this case was to supplement the record on the representations made by the Debtors and their counsel at the November 29, 2011 Hearing such that this Court would be in a position to render a timely decision on ASB's Motion to Dismiss and the Motion for Relief from Stay. To the extent that this Court's Order may have been unclear, this Court entered an *Order Relating to Motion to Dismiss and Motion for Relief from Stay* [Docket Number 63] (the *"Second Supplemental Order"*).Pursuant to the Second Supplemental Order, the Debtors were given until December 30, 2011 to file copies of the declarations pages for the current insurance policy reflecting ASB as loss payee for each of the three properties making up ASB's Real Property Collateral and to provide evidence of the Debtors' gross income, as defined by the Internal Revenue Code, from the Debtors' farming operations for the taxable year preceding and/or each of the second and third taxable years preceding the taxable year in which this case was filed.

On December 30, 2011, counsel for the Debtors filed a *Notice of Filing of Insurance & Proof of Farm Income* [Docket Numbers 70, 71 and 72]. The Debtors again were unable to provide proof of insurance for all three of the properties making up ASB's Real Property Collater-

al. The Debtors did, however, supply evidence relating to the Debtors' historic gross income from farming operations in support of their eligibility for Chapter 12 relief as relates to the requirements of Section 101(18)(A) of the Bankruptcy Code.

On January 10, 2012, the Court issued its *Order: (A) Continuing Disposition of Motion to Dismiss; (B) Denying in Part and Deferring in Part Motion for Relief from Stay; and (C) Granting Adequate Protection as Relates to Insurance Coverage* [Docket Number 87] providing, in relevant part that:

(a) Disposition of the ASB Motion to Dismiss was premature and that this Court would further consider the motion at the confirmation hearing;

(b) Denying, in part, the ASB Motion for Relief from Stay as relates to (i) cause based on lack of adequate protection because no evidence was introduced establishing that the value of the Real Property Collateral was declining in value from petition date to the date of confirmation of the plan such as to warrant relief from stay and (ii) relief pursuant to Sections 362(d)(2) of the Bankruptcy Code because the Real Property Collateral is necessary for an effective reorganization. Consideration of whether other "cause" exists to grant relief from stay pursuant to Sections 362(d)(1) of the Bankruptcy Code was continued to be heard in conjunction with the confirmation hearing; and,

(c) Granting ASB's oral request for adequate protection as relates to insurance coverage.

### 3. *Debtors' Proposed Plan*

On December 12, 2011 the Debtors timely filed their Proposed Plan. On December

14, 2011, this Court issued an *Order Setting Hearing on Confirmation of Chapter 12 Plan* [Docket Number 62], setting January 9, 2012 as the deadline to object to confirmation of the Proposed Plan and scheduling a hearing on confirmation of the Proposed Plan for January 13, 2012.

### 4. December 30, 2011 Pro Se Filings

On December 30, 2011, the Debtors—*pro se*—filed a document titled "Take Judicial Notice Petition to Correct & Amend Court Jurisdiction and Venue" [Docket Number 67] and correspondence relating to the January 13, 2012 hearing scheduled on confirmation of the Debtors' Proposed Plan that references a "summons" to Messrs. M. Naway Raja and Rodney Dale Class [Docket Number 69].[6]

### 5. January 5, 2012 Status Conference

On January 3, 2012, Steven R. Fansler, the Chapter 12 trustee appointed in this case (the *"Chapter 12 Trustee"*), filed a motion to set a telephonic status conference [Docket Number 73], which this Court granted. A telephonic status conference was held on January 5, 2012. The Chapter 12 Trustee and respective counsel for the Debtors, ASB and Farm Credit Services participated in the status conference.[7] Issues were discussed regarding the Debtors' *pro se* filings, Debtors' counsel's request to reschedule the January 13, 2012 confirmation hearing due to a scheduling conflict [Docket Number 74], insurance coverage for the creditors' collateral, alleged real party-in-interest issues relating to the proper holders of certain claims,

and matters relating to the Debtors' Proposed Plan.

Counsel for the Debtors indicated that he had authority to and would in fact withdraw the December 30, 2011 *pro se* filings [Docket Numbers 67 and 69] on or before January 6, 2012 and, based on his discussions with the Debtors, did not anticipate that the Debtors would make any further *pro se* filings or advance arguments at the confirmation hearing of the nature described in the document entitled "Take Judicial Notice Petition to Correct & Amend Court Jurisdiction and Venue." The December 30, 2011 pro se filings were never withdrawn.

This Court rescheduled the hearing on confirmation of the Proposed Plan to January 25, 2012 due to Debtors' counsel's scheduling conflict and extended the deadline to object to confirmation to January 23, 2012. Docket Number 78. The rescheduled confirmation hearing date was still within forty-five days after the date on which the Proposed Plan was filed. *See* 11 U.S.C. § 1224 (requiring that "[e]xcept for cause, [a chapter 12 confirmation] hearing shall be concluded not later than 45 days after the filing of the plan."). Based on discussion during the status conference, it was this Court's impression that the Debtors likely would file an amended Proposed Plan prior to the rescheduled confirmation hearing to address some of the issues raised during the status conference.

### 6. January 6, 2012 Pro Se Filings

On January 6, 2012, the Debtors—*pro se*—filed the following documents: (a) "Objection to Telephonic Status Confer-

---

**6.** The Debtors also filed an "Affidavit of Facts" [Docket Number 68] on December 30, 2011. A copy of the "Affidavit of Facts" was incorporated as an exhibit to the *Notice of Filing of Insurance & Proof of Farm Income* [Docket Number 57] as filed by counsel for the Debtors.

**7.** Counsel for Quality Car also intended to participate in the status conference but was unable to attend due to logistical issues.

ence" [Docket Number 79]; (b) "Take Judicial Notice Petition of Proper Jurisdiction and Venue Clarification" [Docket Number 80]; (c) "At Motion of Entry—Appearance, Rodney–Dale; Class, Private Attorney General/Administrator Beside Carl–Eugene; Pertuset and Vera; Pertuset" [Docket Number 81]; and, (d) "Objections to Defendants Claims, Title 12, Sec. 95a & 95b and Judgment Entry with Motion to Dismiss Civil Rule 12(b)(6)" [Docket Number 82] (styled as a proposed order).

### 7. Motion To Withdraw As Counsel For Debtors

On January 10, 2012, Mr. Hoskins filed the Motion to Withdraw as Counsel. This Court set the Motion to Withdraw as Counsel for hearing with the other matters scheduled for hearing on January 25, 2012. Docket Number 89. The scheduling order further provided that "[c]ounsel for the Debtors shall continue to represent the Debtors in regards to all matters currently scheduled for hearing on January 25, 2012. Should the Debtors find substitute counsel, that counsel must be prepared to move forward with the matters currently scheduled for hearing on January 25, 2012."

### 8. January 20, 2012 Pro Se Filings

On January 20, 2012, the Debtors filed the following additional documents—*pro*

se—with the Court: (a) "Summons" [Docket Number 94]; (b) "Judicial Notice Title 12 Chapter 2 National Banks Section 95–95b and Title 18 Chapter 25 Counterfeiting and Forgery" [Docket Number 95]; (c) "Objection to Motion to Strike Certain Documents" Doc No. 93 [Docket Number 96]; (d) "Objection of Order: (C) Granting Adequate Protection as Relates to Insurance Coverage" [Docket Number 97]; and, (e) "Evidence of Facts" [Docket Number 98].

## II. Legal Analysis

### A. Denial of Debtors' Pro Se Requests at the Confirmation Hearing to Permit Supplemental Representation of Counsel and Introduce Evidence

 At the outset of the Confirmation Hearing the Debtors asked this Court to allow Mr. Rodney Dale Class to appear as a "Private Attorney General" [8] to represent the Debtors in connection with the Confirmation Hearing. Mr. Class drew this Court's attention to a document entitled "At Motion of Entry–Appearance, Rodney–Dale; Class, Private Attorney General/Administrator Beside Carl–Eugene; Pertuset and Vera; Pertuset," which document was not filed by Attorney Hoskins—the Debtors' attorney of rec-

---

**8.** The concept of a "private attorney general" is explained by the United States Supreme Court in *Fox v. Vice:* "

> The statute involved here, 42 U.S.C. § 1988, allows the award of a "reasonable attorney's fee" to the "prevailing party" in various kinds of civil rights cases … When a plaintiff succeeds in remedying a civil rights violation, we have stated, he serves "as a 'private attorney general,' vindicating a policy that Congress considered of the highest priority. He therefore 'should ordinarily recover an attorney's fee' from the defendant—the party whose misconduct created the need for legal action."

—— U.S. ——, 131 S.Ct. 2205, 2213, 180 L.Ed.2d 45 (U.S.2011) (citations omitted). It is clear that the concept of a "private attorney general" is to allow for recovery of reasonable attorney's fees by a successful plaintiff where rights of societal importance are protected to the benefit of a large number of people. *See generally,* 7 Am.Jur.2d *Attorneys At Law* § 241 (2011). This doctrine does not permit a person who is not admitted to practice law to represent a party as an attorney in a court proceeding.

ord—but rather was presented to the Clerk of Courts as a "conventional filing" (*i.e.*, paper filing) in this case on January 6, 2012. Docket Number 81. Upon examination of Mr. Class by this Court, this Court determined that Mr. Class was not an attorney admitted to practice law in this Court or in the highest court of any state. *See* S.D. Ohio Civ. R. 83.3 (criteria for admission to bar); S.D. Ohio Bankr.R. 2090–1 (criteria for attorneys' admission to practice). Therefore, this Court denied the Debtors' request for supplemental representation by Mr. Class for purposes of the Confirmation Hearing.[9]

This Court also orally denied the Debtors' request at the Confirmation Hearing

to introduce certain testimony and documentary evidence in support of the Proposed Plan purporting to refute certain creditors' standing to advance claims in this case.[10] Specifically, the Debtors sought to call Mr. M. Nawaz Raja to testify regarding a "Mortgage Forensic Securitization Analysis Report" [Docket Number 98] (the *"Forensic Report"*)and to introduce the Forensic Report into evidence in support of the Debtors' allegations regarding creditor standing.

 This Court determined that the Forensic Report and the testimony that the Debtors sought to introduce were not properly before this Court.[11] Pursuant to

---

9. This Court did, however, grant a recess in the proceedings to allow Attorney Hoskins time to confer with the Debtors and Mr. Class regarding the substance of Mr. Class' anticipated contribution to the Debtors' representation at the Confirmation Hearing to the extent that Attorney Hoskins felt such information was necessary and relevant to his representation of the Debtors at the Confirmation Hearing.

10. Debtors' counsel stated that the Debtors also questioned this Court's jurisdiction to hear this bankruptcy case but no further argument or evidence was advanced at the Confirmation Hearing regarding any alleged jurisdictional issues.

11. This Court also questioned the propriety and necessity of pursuing standing issues as a condition to confirmation of the Proposed Plan. A central issue raised by the Debtors relating to creditor standing is whether the respective creditors are the holders of the original notes as evidenced by "wet ink signatures." Proposed Plan at p. 1. As noted by this Court at the Confirmation Hearing, it appeared that the Debtors either have viewed or been given the opportunity to view the original notes in a state court foreclosure case (at least as pertains to ASB) and in this proceeding. ASB stated that "[i]n 2009, Mr. Pertuset went to ASB and demanded to see the original notes, at which time they were shown to him. Again, in the state court foreclosure proceedings, ASB produced the origi-

nal notes to alleviate the concerns of the Debtors." Docket Number 105 at p. 5–6. In this case, respective counsel for ASB and Farm Credit Services offered at the January 5, 2012 Status Conference to coordinate with Attorney Hoskins to provide whatever evidence the Debtors wished to see with respect to whether ASB and Farm Credit Services were the holders of the original notes. ASB's counsel followed up with Debtors' counsel on ASB's offer prior to the Confirmation Hearing. Docket Number 105 at p. 3–4.

A significant number of creditors, including Quality Car, Farm Credit Services and ASB, filed proofs of claim early in this chapter 12 case. *See* Quality Car Claim Numbers 2 through 8 (filed September 21, 2011); Farm Credit Services Claim Numbers 11 and 12 (filed October 24, 2011 and amended January 10, 2012); ASB Claim Number 13 (filed November 4, 2011). Such proofs of claim constitute *prima facie* evidence of the validity and amount of such claims. Fed. R. Bankr.P. 3001(f). The standing and securitization allegations were raised by the Debtors as early as the November 29, 2011 Hearing regarding ASB's Motion for Relief from Stay and Motion to Dismiss. Attorney Hoskins stated at the November 29, 2011 Hearing that the Debtors had a forensic accountant who was conducting an audit and investigation of these issues and that such claims would be addressed in the proposed plan and by separate motions. Accordingly, the Debtors had ample opportunity prior to the Confirmation Hear-

this Court's scheduling order setting the Confirmation Hearing, any party intending to present testimony or other evidence at the Confirmation Hearing was required to file with this Court and serve on all adverse parties and any trustee their respective witness and exhibit lists no later than January 23, 2012. Docket Number 78. Attorney Hoskins did not file a witness and exhibit list on behalf of the Debtors disclosing Mr. Raja as a potential witness or identifying the Forensic Report as an exhibit. While the Debtors—*pro se*—filed the Forensic Report with this Court and requested a "summons" for Mr. Raja to appear at the Confirmation Hearing [Docket Numbers 69 and 98], Attorney Hoskins did not affirmatively state his willingness at the Confirmation Hearing to adopt such filings as the Debtors' counsel of record.[12]

Section 1654 of Title 28 of the United States Code provides:

> In all courts of the United States the parties may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein.

28 U.S.C. § 1654. Most courts interpreting 28 U.S.C. § 1654 have held that this statute presents an either/or proposition—*i.e.*, either a party is represented by an attorney or such party represents themselves. *See, e.g., In re Trinsey*, 115 B.R. 828, 833 (Bankr.E.D.Pa.1990) (finding that "[t]here is no right to 'hybrid' representation that would result in simultaneous or alternating self-representation and representation by counsel."). The Debtors retained Attorney Hoskins to represent them in this bankruptcy case and even went so far as to state in their *pro se* filings that they would "not release their attorney as there is a contract between him [Attorney Hoskins] and Plaintiffs [Debtors] as payment is being requested by him for his services." Docket Number 95, numbered paragraph 12. As such, this Court found that the Debtors were not entitled to present testimony and evidence at the Confirmation Hearing based on *pro se* filings made by the Debtors which were not properly before the Court.[13]

**B.** ***Debtors' Oral Motion to Continue Confirmation Hearing***

■ Following a brief direct examination of Debtor Carl Pertuset by Attorney Hoskins regarding the Proposed Plan, the Debtors orally requested a thirty day continuance of the Confirmation Hearing in

---

ing to investigate and, if appropriate, initiate proceedings to challenge creditor standing. Moreover, certain creditors raised issues of preclusion based on judgment entries in the state court proceedings finding that such creditors had valid claims against the Debtors and liens against certain property of the Debtors. Farm Credit Services Hearing Exhibit J (certified Judgment Entry from Court of Common Pleas, Scioto County, Ohio dated August 9, 2011 finding that ASB and Farm Credit Services have valid mortgages on certain property of the Debtors); Quality Car Hearing Exhibit C (certified Order Sustaining Plaintiff's Motion for Judgment on the Pleadings dated July 11, 2011 entering judgment in favor of Quality Car against the Debtors). Therefore, the issue of creditor standing may be equitably or legally moot to a substantial degree.

12. To the contrary, Attorney Hoskins subsequently expressed concern at the Confirmation Hearing about his ability to proceed with the Debtors' theories in this case in light of potential Rule 11 concerns and based on his obligations to the bar and to this Court. *See* Fed. R. Civ. Proc. 11, made applicable to bankruptcy proceedings by Fed. R. Bankr. Proc. 9011.

13. Accordingly, this Court did not, and will not, address the substance of any of the allegations and averments made in the *pro se* filings nor will this Court issue any orders relating to any purported motions filed by the Debtors *pro se*.

order to file a revised plan. During this thirty day period, the Debtors proposed to conduct limited discovery, properly file motions relative to disputed proofs of claim, properly identify witnesses and exhibits in support of the Debtors' arguments, and to retain new counsel who may more fully understand and present the Debtors' case. The Debtors maintain that cause exists to continue the Confirmation Hearing based on newly found evidence and based on a divergence of strategy between the Debtors and their counsel, Attorney Hoskins. ASB, Farm Credit Services, Quality Car and the Chapter 12 Trustee fervently opposed any continuance of the Confirmation Hearing.

■ The ultimate goal in a Chapter 12 bankruptcy case is to confirm a plan of reorganization for the family farmer. *See* 8–1200 Collier on Bankruptcy ¶ 1200.01. Only the debtor may file a plan, which must be done no later than 90 days after the petition is filed unless the court extends this period based on circumstances for which the debtor should not justly be held accountable. 11 U.S.C. 1221. The bankruptcy court is statutorily required to conclude the confirmation hearing no later than 45 days after the filing of the debtor's propose plan, "except for cause." 11 U.S.C. § 1224. These mandatory time periods are included so that "chapter 12 cases would be processed expeditiously by the bankruptcy courts and would not be subject to delay so often characteristic of chapter 11 cases." 8–1200 Collier on Bankruptcy ¶ 1200.01. The legislative history suggests that Congress intended that Chapter 12 bankruptcy cases were to move along expeditiously to protect creditor's interests and to preclude diminution in the value of collateral if a reorganization cannot be achieved. *In re Pretzer,* 96 B.R. 790, 793 (Bankr.N.D.Ohio 1989) (citations omitted).

■ The Bankruptcy Code does not define what constitutes "cause" to extend the time in which to conclude a Chapter 12 confirmation hearing. The legislative history suggests that any extension of the 45–day requirement was created primarily for the convenience of the court. *See* 8–1224 Collier on Bankruptcy ¶ 1224.01.

> Section 1224 requires that Chapter 12 confirmation hearings be concluded within 45 days after the filing of the plan. The Conferees are aware that this imposes a burden on the bankruptcy courts. Therefore, an exception for cause is provided. While a backlog of cases is sufficient cause for an extension of the 45–day requirement, the Conferees expect this exception to be used sparingly in order to facilitate the proper operation of Chapter 12—which proper operation depends on prompt action.

H.R.Rep. No. 958, 99th Cong., 2d Sess. 50 (1986), 1986 U.S.C.C.A.N. 5246, 5251. While cause may exist for other reasons, such as a court's willingness to allow the debtor additional time to propose a modified plan where doing so would be in the best interests of the estate and creditors, *see In re Sorrell,* 286 B.R. 798, 809 (Bankr. Utah 2002), "cause should be found only in unusual circumstances and extensions of the deadline should not be granted routinely." 8–1224 Collier on Bankruptcy ¶ 1224.01 (2011).

This Court finds that cause does not exist to continue the Confirmation Hearing on the grounds requested by the Debtors. First, the Debtors request a continuance to conduct limited discovery and, as warranted, bring actions to dispute claims. The Debtors, however, have had ample opportunity to conduct discovery and contest claims. This Chapter 12 case was filed in mid-September 2011. Many creditors filed claims early in this case, giving the Debtors more than sufficient time to

review claims, make requests for additional information or documentation, and contest such claims. *See In re Thao,* 2006 WL 4449684, 2006 Bankr.LEXIS 4057 (Bankr. W.D.Mo. Oct. 19, 2006)(denying Chapter 12 debtors' request to continue confirmation hearing until after conclusion of adversary proceeding and noting that "[i]f the Debtors were serious about funding or shaping their plan around their damage claims against the Bank [in the adversary proceeding], they should have moved forward more expeditiously in the adversary action"). This Court notes that ASB and Farm Credit Services even offered to participate in informal discovery.

Second, the Debtors have not established that there is anything new to discover in this case. The primary creditors' claims and underlying documentation have been known to the Debtors throughout two Chapter 12 bankruptcy cases and multiple state court proceedings. The Debtors have had the opportunity to conduct discovery throughout this entire period of time. The Debtors either have chosen not to make use of their discovery rights or are simply seeking to pursue duplicative discovery. The same is true for matters relating to the Forensic Report. The Debtors intimated to pursuing a "forensic audit" as early as the November 29, 2011 Hearing. The Debtors presented no evidence that they or their forensic auditor made any efforts prior to the Confirmation Hearing to seek discovery from the creditors to be audited on this subject.

Third, the Debtors' request for additional time to retain new counsel and to properly identify witnesses and exhibits in support of the Debtors' underlying arguments similarly does not warrant cause to continue the Confirmation Hearing. This Court made clear by prior order that the Confirmation Hearing would go forward on January 25, 2012 and, if the Debtors chose to obtain substitute counsel, that counsel must be prepared to go forward with all matters scheduled for hearing on such date. Docket Number 89. This Court's order setting deadlines to file witness and exhibits lists in connection with the Confirmation Hearing was similarly clear and unambiguous. Docket Number 78.

■ Finally, further delay in this proceeding would be highly prejudicial to creditors. Many of the creditors present at the Confirmation Hearing have not been paid for several years and, as argued at the Confirmation Hearing, have expended time and money in state court proceedings, the Debtors' prior Chapter 12 case and this Chapter 12 case in connection with their claims against the Debtors. This Court—notwithstanding multiple objections by creditors—gave the Debtors the benefit of the full time period afforded to Chapter 12 debtors to propose and confirm a plan of reorganization. While the Bankruptcy Code strives to give debtors an opportunity to reorganize, such right must be balanced against the resulting prejudice to creditors. The facts of this case do not support imposing any further prejudice to creditors by continuing the Confirmation Hearing.

For the foregoing reasons, this Court denies the Motion to Continue the Confirmation Hearing.

## C. *Confirmation of the Proposed Plan*

■ ASB, Farm Credit Services, Quality Car, Ohio Valley Resource Conservation and Development and the Chapter 12 Trustee filed objections to confirmation of the Proposed Plan (collectively, the "*Plan Objections*").This Court finds that the Plan Objections are well founded. Although the objecting creditors and Chapter 12 Trustee raise a number of persuasive arguments as to why the Proposed Plan should not be confirmed, this Court

finds it necessary to address only those aspects of the Proposed Plan that fail to meet the best interests of creditors test, feasibility and good faith requirements of Section 1225 of the Bankruptcy Code.

■ Section 1225(a)(4) of the Bankruptcy Code, commonly known as the "best interest of creditors test," states that the court shall confirm a plan if, among other requirements, the plan provides that creditors will receive as much under a debtor's Chapter 12 plan as they would receive in a Chapter 7 liquidation. *Rice v. Dunbar (In re Rice)*, 357 B.R. 514, 518 (8th Cir. BAP 2006). The debtor bears the burden of proving a proposed plan is confirmable within the requirements of Section 1225 of the Bankruptcy Code. *See, e.g., In re Gray–Bailey*, 427 B.R. 536, 538 (Bankr.D.Idaho 2010).

The Proposed Plan does not contain a liquidation analysis from which this Court and parties in interest may evaluate whether the Proposed Plan meets the best interests of creditors test nor can one discern whether this requirement is met from the information provided in the Proposed Plan. The Proposed Plan contains conflicting values for the same properties [14] and the Chapter 12 Trustee questions whether certain property is undervalued.[15] It is equally unclear from the Proposed Plan what amounts the Debtors propose to pay their creditors, further clouding the comparative analysis between what creditors would receive under the Proposed Plan and what they would receive in a hypothetical liquidation.[16] Accordingly, the Debtors have failed to meet their burden to establish that the Proposed Plan is in the best interest of creditors as required by Section 1225(a)(4) of the Bankruptcy Code.

■ The Debtors have failed to prove that the Proposed Plan meets the feasibility requirements of Section 1225(a)(6) of the Bankruptcy Code, which requires the Debtors to establish that they will be able "to make all payments under the plan and to comply with the plan." 11 U.S.C. § 1225(a)(6). First, the Proposed Plan lacks sufficient specificity for this Court to ascertain which creditors are to be paid, when and in what amounts they are to be paid, and what funds are anticipated to be available to make such payments. It is unclear from the Proposed Plan which claims the Debtors believe are valid and which claims they contest. Arguably, it appears from the preamble to the Proposed Plan that the Debtors are contesting all claims. Proposed Plan at p. 1. The Proposed Plan does not include any cur-

---

14. The Debtors value the Jacquays Run Road property at $185,000 as relates to ASB's secured claim and at $175,000 as relates to Farm Credit Services Claim. *See* Proposed Plan, Article III, Class IV(C) and (E). Similarly, the Debtors value the McDermott Pond Creek Road property at $75,700 for purposes of Southern Ohio Growth Partnership's third mortgage claim and at $84,600 for the same creditor's second mortgage claim. Proposed Plan, Article III, Class IV(W) and (X).

15. "It appears that at a minimum, on page 7 of the Plan under (E) under 'Class IV: Fully Secured Claims,' that 181.458 acres of improved real estate [Jacquays Run Road property] has a secured debt of $107,291.00 and a claim value of $175,000.00. The Trustee doubts that the value of that property is less than $1,000.00 per acre and further believes that the Debtors must answer for the equity in the property to the unsecured creditors. Other equity may also require the payment of additional funds to the Trustee for unsecured creditors." Docket Number 86 at pp. 1–2.

16. "The Debtors may pay claims in [the unsecured creditor class at] an estimated 1% via the payments made as part of this plan … [a]dditionally the Debtors may pay all of their disposable income after payment of living expenses set forth in their Schedule J and the claims of creditors in Classes I, II, III, IV and V, until such time as the plan is completed and the remaining debt shall be discharged." Proposed Plan, p. 12.

rent or projected income and expense figures to determine what cash flow will be available to fund the Proposed Plan, nor (as discussed subsequently in this Court's consideration of the Motions to Dismiss) can this Court glean such knowledge from the financial information otherwise in the record. Indeed, the Chapter 12 Trustee, who is the person charged with administering the Proposed Plan were it to be confirmed, succinctly stated at the Confirmation Hearing that he would find it impossible to do so. Consequently, this Court finds that the Debtors have failed to meet their burden to establish that the Proposed Plan is feasible as required by Section 1225(a)(6) of the Bankruptcy Code.

■ Finally, for the reasons set forth below in this Court's consideration of the Motions to Dismiss, this Court finds that the Debtors have failed to establish that the Proposed Plan is proposed in good faith, as required by Section 1225(a)(3) of the Bankruptcy Code.

For each of the foregoing reasons, this Court sustains the Plan Objections. Confirmation of the Proposed Plan is denied.

### D. *Motions to Dismiss*

ASB, Farm Credit Services and Quality Car (the *"Creditors"*)seek to dismiss this bankruptcy case "for cause," pursuant to Sections 1208(c) of the Bankruptcy Code. The Creditors allege multiple grounds as cause for dismissal of this case, including, gross mismanagement by the Debtors which is prejudicial to creditors, continuing loss to or diminution of the estate, the absence of a reasonable likelihood of rehabilitation and bad faith by the Debtors in either commencing this case and/or in proposing the Proposed Plan.[17]

■ The Creditors bear the burden to establish that cause exists to dismiss this case. *See In re French,* 139 B.R. 476, 479 (Bank.D.S.D.1992). ASB sought to illicit testimony from the Debtors at the Confirmation Hearing relevant to the Debtors' plan (as proposed or modified), their ability to earn income and other subjects relevant to the matters before this Court.[18] Both Debtors refused to testify as to these subjects.[19] In considering the record as a whole, including testimony and other evidence from the October 6, 2011 and November 29, 2011 Hearings, this Court finds that cause exists to dismiss this Chapter 12 case.

### 1. *Unreasonable Delay, or Gross Mismanagement, by the Debtors that is Prejudicial to Creditors [11 U.S.C. § 1208(c)(1) ]*

■ The Creditors allege that cause exists to dismiss this case pursuant to

**17.** As additional grounds to dismiss this case, ASB and the Chapter 12 Trustee allege that the Debtors are not eligible to be debtors under Chapter 12 of the Bankruptcy Code because the Debtors are not "family farmers ... with regular annual income" and because the Debtors' historic gross income figures are not within the parameters required by the Bankruptcy Code to qualify as a "family farmer" in accordance with Sections 109(f) and 101(18)(A) of the Bankruptcy Code. ASB and the Chapter 12 Trustee did not offer any evidence or argument at the Confirmation Hearing regarding these grounds for dismissal. Moreover, the Chapter 12 Trustee stated that the eligibility issue was not a significant issue in his view in light of the other asserted grounds for dismissal. Accordingly, this Court will not address whether the Debtors' eligibility to be debtors under Chapter 12 of the Bankruptcy Code is grounds for dismissal of this case.

**18.** ASB did identify both Debtors as potential witnesses on its witness list. Docket Number 103.

**19.** Debtor Carl Pertuset subsequently agreed to testify but solely on the subject of Farm Credit Services' offer into evidence of the original loan documents between Farm Credit Services and the Debtors.

Section 1208(c)(1) of the Bankruptcy Code for unreasonable delay, or gross mismanagement, by the Debtors that is prejudicial to creditors. Specifically, the Creditors assert that the Debtors' failure to maintain insurance, failure to demonstrate that any "business" exists, inability to obtain contracts or generate income from their purported business, and inability to make any payments to creditors is evidence of gross mismanagement that is prejudicial to creditors. This Court agrees with the Creditors' assessment.

As noted previously, the Debtors' Proposed Plan does not include any current or projected income and expense figures. The financial information filed by the Debtors is limited and impossible to reconcile with any degree of certainty. The Debtors' income and expense figures from Schedules I and J reflect combined average monthly income of $2,989 (consisting of $2,000 from farming operations and $989 from Social Security disability payments) and average monthly living expenses of $1,985, leaving approximately $1,000 for a "Chapter 12 Proposed monthly payment." Docket Number 1. The Court notes, however, that Schedule J does not include any expenses for farming operations, making it unclear whether the Debtors have accounted for these expenses.

The Debtors' Statement of Financial Affairs reflects the following historic income information:

| Source | Current Year (2011) | 2010 | 2009 |
|---|---|---|---|
| Social Security Disability | $8,901 | $11,868 | $13,025 |
| Income from Farm | $18,000 | $9,238 | Loss |
| Total | $26,901.00 | $23,116.00 | $13,025 |

Docket Number 1. It is unclear whether these are gross or net income figures.

In response to this Court's *Order Relating to Motion to Dismiss and Motion for Relief from Stay* [Docket Number 63], the Debtors filed a "Summary of Operations–Family Farmer" and IRS Form 1040 Schedule F for 2008 and 2009 and Schedule C for 2010 from the Debtors' federal tax returns, reflecting the following income and expense figures from farming operations:

| | 2010 | 2009 | 2008 |
|---|---|---|---|
| Gross Farm Income | $82,599 | $196,021 | $681,595 |
| Less: Expenses (excluding depreciation, taxes, fees and interest) | $70,448 | $158,392 | $584,645 |
| Subtotal | $12,151 | $37,629 | $96,950 |
| Net Profit (Loss) after expenses, depreciation, taxes, fees and interest | ($21,008) | ($4,505) | $908 |

Docket Numbers 70 and 71. Again, it is not possible to reconcile the financial information filed by the Debtors, particularly without the benefit of the Debtors' testimony.

The Chapter 12 Trustee stated at the Confirmation Hearing that, when questioned at the meeting of creditors, the Debtors were unable to provide a description of their specific jobs or their specific amount of income. At the November 29, 2011 Hearing, Debtor Carl Pertuset was similarly vague in his testimony regarding the Debtors' current income and expense

figures from farming operations and future business prospects. Synopsizing Debtor Carl Pertuset's at times conflicting testimony from the November 29, 2011 Hearing, the best this Court can surmise is that Debtors' primary income from farming operations is from the sale of railway cross-ties and logs for veneer. The Debtors' average net profit from the sale of railway cross-ties ranges from $900 to $1,950 per month. The Debtors had one post-petition sale of logs for veneer in early November 2011 with an estimated net profit of $700. The Debtors' farming operations also include the sale of lumber bi-products, such as chips, pulp and saw dust, with an average monthly net profit of $736. The Debtors occasionally have farm income from the sale of cows. Debtor Carl Pertuset testified that the Debtors had not prepared any post-petition monthly financial statements. When questioned regarding contracts for future work, Debtor Carl Pertuset's testimony was similarly nondescript. Debtor Carl Pertuset stated that the Debtors sell most of their products to Glatfelter (a paper company) but had prospects with Georgia Pacific and Globe Metal, although acknowledging that the Debtors had not done business with either of the latter two companies in the last eight to fifteen years respectively. Overall, this Court found the testimony regarding the Debtors' financial operations to be broad generalizations and conjecture, providing little substance from which this Court and parties in interest may use to evaluate the viability of the Debtors' current or future farming operations.

The Debtors' inability to provide reliable financial information is evidence of gross mismanagement that is prejudicial to creditors since creditors are unable to ascertain the Debtors' financial wherewithal to repay obligations owed to creditors or determine the Debtors' prospects for future business. *Cf. Fid. Deposit & Discount Bank v. Domiano (In re Domiano)*, 442 B.R. 97, 105 (Bankr.M.D.Pa.2010) ("Failure of a debtor to properly report income and expenses constitutes evidence of 'gross mismanagement' under § 1112(b)(4)(B)." (citations omitted)). The Debtors' failure to provide insurance for the Creditors' collateral is further indicia of gross mismanagement that is prejudicial to creditors. Finally, the Debtors' failure to confirm their Proposed Plan within the time periods specified by the Bankruptcy Code, particularly in light of the fact that this is the Debtors' second Chapter 12 case, signifies unreasonable delay that is prejudicial to creditors. Collier 8–1208 Collier on Bankruptcy ¶ 1208.03 (2011) ("Unreasonable delay can be found from the debtor's failure to file or confirm a plan on a timely basis.").

Under the totality of the circumstances in this case, this Court finds that cause exists to dismiss this case based on unreasonable delay, or gross mismanagement, by the Debtors that is prejudicial to creditors. 11 U.S.C. § 1208(c)(1).

### 2. *Continuing Loss to or Diminution of the Estate and Absence of a Reasonable Likelihood of Rehabilitation [11 U.S.C. § 1208(c)(9) ]*

The Creditors allege that cause exists to dismiss this case pursuant to Section 1208(c)(9) of the Bankruptcy Code based on continuing loss to or diminution of the estate and absence of reasonable likelihood of rehabilitation. The Creditors maintain that the Debtors do not have a viable farming operation sufficient to pay expenses and fund a plan and that the value of the estate continues to diminish with the passage of time and the lack of payments to creditors. Again, this Court agrees with the Creditors' position.

Even construing the evidence in the record in a light most favorable to the Debtors, this Court is unable to find that the Debtors have a reasonable likelihood of rehabilitation. The Debtors' financial information reflects that the Debtors' farming operations barely breakeven before consideration of debt service. While Debtor Carl Pertuset testified at the November 29, 2011 Hearing that he is recovering from a medical condition that has prevented him from being actively involved in the Debtors' farming operations for an extended period of time, he also testified that he has not been fully cleared to return to all activities. In evaluating the probability of the Debtors' rehabilitation, this Court is also mindful that the Debtors may lose the almost $1,000 in Social Security disability payments that the Debtors currently receive if Debtor Carl Pertuset resumes his normal activities. Moreover, there is no evidence to suggest that the Debtors' efforts to pursue work from Georgia Pacific, Globe Metal or other sources ultimately will materialize in actual commitments for new business. *Cf. Clarkson v. Cooke Sales & Service Co. (In re Clarkson)*, 767 F.2d 417, 420 (8th Cir.1985) (citations omitted)(finding that visionary promises are not sufficient proof of ability to reorganize).

This Court is cognizant that this is the Debtors' second Chapter 12 case. The Debtors were unable to propose a confirmable plan in their previous Chapter 12 case. *Pertuset v. American Savs. Bank, FSB (In re Pertuset)*, 438 B.R. 354, 2010 WL 3422455, at *2–3 (6th Cir. BAP 2010) (confirming dismissal of case for failure to timely file plan and noting that the plan filed by the Debtors was not complete and "simply generically stated that creditors would be paid pro rata at the interest rate of 6% 'if no post-confirmation interest rate is stated for a creditor' "). For the reasons previously discussed, the Debtors'

Proposed Plan in this Chapter 12 case is not confirmable and there is no indication of any change in circumstances in the foreseeable future. In the meantime, the Debtors' estate is diminishing and their creditors' positions continue to erode based on lack of payment. *See In re Butler*, 101 B.R. 566, 568–69 (Bankr.E.D.Ark.1989)(dismissing Chapter 12 case pursuant to 11 U.S.C. § 1208(c)(9) where debtor had no realistic chance of reorganization and creditors had received no payments for the year that the debtor operated his business under the shield of the bankruptcy court). Accordingly, this Court finds that cause exists to dismiss this case based on continuing loss to or diminution of the Debtors' estate and absence of reasonable likelihood of rehabilitation. 11 U.S.C. § 1208(c)(9).

**3. *Denial of Confirmation of the Proposed Plan and Denial of Request for Additional Time to File a Revised Plan [11 U.S.C. § 1208(c)(5) ]***

■ Section 1208(c)(5) of the Bankruptcy Code provides that the court may dismiss a Chapter 12 case for cause where the court denies confirmation of a plan under Section 1225 of the Bankruptcy Code and denies a request for additional time to file another plan or to modify a proposed plan. 11 U.S.C. § 1208(c)(5). Based on this Court's denial of confirmation of the Proposed Plan and denial of the Debtors' Motion to Continue the Confirmation Hearing in order to file a revised plan, this Court finds that cause exists pursuant to Section 1208(c)(5) of the Bankruptcy Code to dismiss this case.

**4. *Bad Faith***

The Creditors and the Chapter 12 Trustee argue that this Court should deny confirmation of the Proposed Plan and dismiss this Chapter 12 case because the Debtors'

petition and Proposed Plan were filed in bad faith.

 A debtor's bad faith in proposing a plan is grounds for denial of confirmation. 11 U.S.C. § 1225(a)(3)(requiring that a plan must be "proposed in good faith and not by any means forbidden by law" as a condition to confirmation). Similarly, a debtor's bad faith in filing a petition is grounds for dismissal of a Chapter 12 case, for cause, pursuant to Section 1208(c) of the Bankruptcy Code. *See, e.g., In re Burger*, 254 B.R. 692, 696 (Bankr. S.D.Ohio 2000) ("Evidence of bad faith filing constitutes cause for dismissal pursuant to § 1208(c)."); *In re Walton*, 116 B.R. 536, 539 (Bankr.N.D.Ohio 1990)("The Code had an implied requirement of good faith in filing a bankruptcy petition. the lack of which is cause for dismissal." (internal citations omitted)); *In re Beswick*, 98 B.R. 900, 902 (Bankr.N.D.Ill.1989) (noting that several courts interpret Sections 1208(c)(1) and(9) of the Bankruptcy Code to include lack of good faith as cause for dismissal). "[G]ood faith is an amorphous notion largely defined by factual inquiry." *In re Zurface*, 95 B.R. 527, 535 (Bankr.S.D.Ohio 1989) (citing *Metro Employees Credit Union v. Okoreeh–Baah (In re Okoreeh–Baah)*, 836 F.2d 1030, 1033 (6th Cir.1988)). There is a substantial overlap between the factors that courts look to in determining a debtor's good faith in proposing a plan and filing a bankruptcy petition. *See Alt v. United States of America (In re Alt)*, 305 F.3d 413, 419 (6th Cir.2002).

 In assessing whether a plan is proposed in good faith, courts in this circuit look to the following nonexclusive list of factors:

1. the amount of the proposed payments and the amount of the debtor's surplus;

2. the debtor's employment history, ability to earn and likelihood of future increase in income;

3. the probable or expected duration of the plan;

4. the accuracy of the plan's statements of the debts, expenses and percentage repayment of unsecured debt and whether any inaccuracies are an attempt to mislead the court;

5. the extent of preferential treatment between classes of creditors;

6. the extent to which secured claims are modified;

7. the type of debt sought to be discharged and whether any such debt is nondischargeable in Chapter 7;

8. the existence of special circumstances such as inordinate medical expenses;

9. the frequency with which the debtor has sought relief under the [Bankruptcy Code];

10. the motivation and sincerity of the debtor in seeking [bankruptcy] relief;

11. the burden which the plan's administration would place upon the trustee; and,

12. whether the debtor is attempting to abuse the spirit of the [Bankruptcy Code].

*Hardin v. Caldwell (In re Caldwell)*, 895 F.2d 1123, 1126–27 (6th Cir.1990)(*citing In re Okoreeh–Baah*, 836 F.2d at 1032).[20] Ul-

---

**20.** While the factors set forth by the Court of Appeals for the Sixth Circuit in *In re Caldwell* and *In re Okoreeh–Baah* were expressed in the context of a Chapter 13 plan, courts look to the same factors in determining whether a Chapter 12 plan is filed in good faith. *See In re Zurface*, 95 B.R. at 535 ("The requirements for confirmation of a Chapter 12 plan set forth in 11 U.S.C. § 1225 are substantially the same as those applicable to Chapter 13 plans

timately, a court must determine, based on individual circumstances, whether a debtor has a sincere intent to repay his or her creditors consistent with the debtor's available resources. *See In re Zurface,* 95 B.R. at 535.

 When considering whether a petition is filed in good faith, in addition to the foregoing factors, courts in this circuit also consider:

1. the nature of the debt, including the question of whether the debt would be nondischargeable in a Chapter 7 proceeding;

2. the timing of the petition;

3. how the debt arose;

4. the debtor's motive in filing the petition;

5. how the debtor's actions affected creditors;

6. the debtor's treatment of creditors both before and after the petition was filed; and,

7. whether the debtor has been forthcoming with the bankruptcy court and the creditors.

*In re Alt,* 305 F.3d at 419–20 (*citing Matter of Love,* 957 F.2d 1350, 1357 (7th Cir. 1992)). At the end of the day, both good faith evaluations require the court to determine, under the totality of circumstances present in the case, whether there has been an abuse of the provisions, purpose, or spirit of the Bankruptcy Code— the question being one of fundamental fairness. *Id.; see also, In re Burger,* 254 B.R. at 696 ("the ultimate inquiry . . . is whether the debtor has abused the bankruptcy process").

(See, 11 U.S.C. § 1325), and analogy may be made to Chapter 13 precedents in interpreting § 1225."). The same is true when considering factors relevant to whether a Chapter 12 petition was filed in good faith. *See In re Burger,* 254 B.R. at 696 ("To determine

 This Court is mindful that the Debtors bear the burden of showing their plan was proposed in good faith while the Creditors and the Chapter 12 Trustee bear the burden of showing the Debtors' lack of good faith in seeking a dismissal of this case. Given the severe consequences of dismissal, courts generally are more reluctant to dismiss a petition for lack of good faith than to reject a plan for lack of good faith. *See In re Alt,* 305 F.3d at 420 (*citing Matter of Love,* 957 F.2d at 1356). As explained below, this Court nonetheless finds that the Debtors have failed to meet their burden to establish that their plan was proposed in good faith and the Creditors have met their burden to establish that cause exists to dismiss this case based on the Debtors' lack of good faith.

### a. *A Finding Of Bad Faith Sufficient To Warrant Dismissal Of This Case Is Appropriate Under The Totality Of The Circumstances*

 Chapter 12 of the Bankruptcy Code "offers family farmers the important protection from creditors that bankruptcy provides while, at the same time, preventing abuse of the system and ensuring that farm lenders receive a fair repayment." *Justice v. Valley Nat'l Bank,* 849 F.2d 1078, 1086 (8th Cir.1988) (citations omitted). While the Debtors' intent in commencing this case and in proposing their plan is perhaps not malicious, their imprudent and misguided dealings with their creditors and this Court have the same effect of hindering the legitimate expectations of creditors and abusing the letter and spirit of the Bankruptcy Code.

whether a Chapter 12 petition has been filed in bad faith, courts often look to the same factors analyzed in the Chapter 13 context."); *In re Walton,* 116 B.R. at 540 (concurring that "chapter 13 good faith factors apply to chapter 12").

As discussed in detail previously, this case is lacking even the most basic financial information regarding the Debtors' current farming operations and prospects for future business. The Debtors' Proposed Plan fails to meet the elementary requirements of feasibility or establish that the plan is in the best interest of creditors. This Court places great weight on the Chapter 12 Trustee's assessment of the Proposed Plan and his observations regarding the Debtors' conduct in this case and their previous Chapter 12 case. The Chapter 12 Trustee, who has served as a Chapter 12 trustee for twenty-five years and whose allegiance is to the functionality and integrity of the Chapter 12 process and not to any individual parties' interest, stated that it would be impossible for him to administer the Proposed Plan as drafted as it lacked sufficient specificity as to whom, when and in what amounts claims were to be paid. Moreover, it was the Chapter 12 Trustee's assessment that the Debtors' actions in this case and their previous Chapter 12 case were replete with conduct evidencing the Debtors' bad faith and lack of intent to repay creditors.

Indeed, rather than expressing a sincere intent to repay their creditors consistent with the Debtors' available resources, the Debtors' Proposed Plan contests most—if not all—of their creditors' claims. The Debtors did not list any claims as contingent, unliquidated or disputed in their bankruptcy schedules. Several claims in fact appear to have been reduced to judgment in state court proceedings. *See* Farm Credit Services Hearing Exhibit J (certified Judgment Entry from Court of Common Pleas, Scioto County, Ohio dated August 9, 2011 finding that ASB and Farm Credit Services have valid mortgages on certain property of the Debtors); Quality Car Hearing Exhibit C (certified Order Sustaining Plaintiff's Motion for Judgment on the Pleadings dated July 11, 2011 entering judgment in favor of Quality Car against the Debtors). The Debtors, however, state in their Proposed Plan that "the Debtors believe that most of the Creditors do not have valid proof [sic] of claim, including unsecured Creditors." Proposed Plan, p. 1.

While claim disputes are not uncommon in a bankruptcy case, the likelihood of essentially all claims being disallowed in this case strikes this Court as being so improbable as to denote the Debtors' bad faith in making such an assertion. The bankruptcy court in *In re Mitrano* found that dismissal of a Chapter 13 case for bad faith was appropriate where the debtor characterized almost every claim as disputed, including claims that were reduced to judgment. 2008 WL 4533659 at *2–3, 2008 Bankr.LEXIS 4177 at *8–11 (Bankr. E.D.Va. Sept. 30, 2008). The *Mitrano* court noted that:

> The purpose of chapter 13 is to enable a financially-strapped debtor to restructure his or her debts and to repay creditors to the best of his or her ability under court protection and court supervision. It is of course true that in the course of administering a bankruptcy case, the court has the authority to determine the amount and validity of claims filed by creditors seeking to be paid. § 502(b), Bankruptcy Code; Fed. R. Bankr.P. 3007. In such instances, however, the adjudication of disputed claims is secondary to the goal of repaying creditors under a plan. Nothing in the history or structure of the Bankruptcy Code suggests that Congress ever intended the code as simply providing an alternative federal forum for the resolution of state law claims, let alone serving as a forum of last resort when a litigant had been unsuccessful in other courts.

*Id.* at *2–3, 2008 Bankr.LEXIS 4177 at *8–9. This Court likewise finds that the Debtors' dispute of essentially all of their creditors' claims and resort to this Court as an additional forum to litigate the validity of such claims is a major factor supporting dismissal of this case on the grounds of bad faith.

The Debtors' course of conduct in their prior Chapter 12 case and in the instant Chapter 12 proceeding further draws into question the Debtors' good faith in filing their petition and Proposed Plan. The Debtors' current Chapter 12 case is following the all too familiar path of their previous Chapter 12 case. In each case, the Debtors filed their petition with the benefit of being represented by bankruptcy counsel. At some point in each case, however, there was a break down between the Debtors and their counsel on the proper manner in which the case should proceed, resulting in the filing of requests to withdraw as counsel for the Debtors.

Likewise, in each bankruptcy case, the Debtors advanced peculiar theories as to how they proposed to repay their creditors. In their first Chapter 12 bankruptcy case, the Debtors proposed to fund their purported plan—not from farming operations—but rather from the liquidation of a purported multi-billion dollar maritime judgment lien assigned for the benefit of creditors. *See In re Pertuset,* 438 B.R. 354, 2010 WL 3422455, at *3. The Debtors maintained that they had been assigned a $1.75 million partial interest in a maritime judgment lien and sought to have the Chapter 12 Trustee liquidate the lien and pay their creditors in full. *Id.* In affirming the Bankruptcy Court's dismissal of the Debtors' first Chapter 12 case, the Bankruptcy Appellate Panel for the Sixth Circuit found that:

> The Debtors' argument regarding the validity of the assignment of the mari-time lien also fails. Included with the purported lien documents is an order of the United States Bankruptcy Court for the Middle District of Alabama dated February 11, 2009, finding that the liens are "invalid, illegal, and wholly without support or merit," and avoiding the lien. This order, combined with the Debtors' failure to provide consideration for the assignment of a $1.75 million interest in a maritime lien, calls the legitimacy and ability of the Debtors to collect into serious question.

*Id.* at *4.

In their present Chapter 12 case, the Debtors seek to advance jurisdictional, standing and securitization arguments—on grounds that their counsel could not articulate or support at the Confirmation Hearing—as to why the Debtors are not obligated to pay numerous if not all claims of their creditors. In this regard, the Debtors chose to involve the services of a "forensic accountant" to investigate their standing and securitization claims rather than to seek the services of a financial accountant or advisor to aid the Debtors in formulating a plan to repay creditors focused on their farming operations. The Debtors' history of diverging from counsel and pursuing questionable alternatives in connection with a plan of reorganization is yet another factor that weighs towards dismissal of this case based on the Debtors' lack of good faith.

Similarly, the Debtors' dealings with their creditors and, at times, this Court reflect a lack of good faith on the part of the Debtors. At the Confirmation Hearing, Farm Credit Services moved into evidence the case docket and the select pleadings filed by the Debtors in the state court foreclosure action before the Scioto County Common Pleas Court (the *"State Court"*), Case No. 09CIE00140 (the *"Foreclosure Action"*).Farm Credit Services Hearing

Exhibits J and M through DD. The Foreclosure Action was commenced on June 5, 2009 and Farm Credit Services and ASB obtained judgment, over two years later, on August 9, 2011 (the *"Foreclosure Judgment"*).The Debtors appealed the Foreclosure Judgment to the Fourth District Court of Appeals, then filed this bankruptcy case shortly thereafter. Even a cursory review of the state court docket and related correspondence and pleadings reflect a multitude of *pro se* filings by the Debtors asserting obscure claims and defenses, many of which duplicate the legal contentions that the Debtors wish to raise in this bankruptcy proceeding regarding whether creditors have standing and/or are the real party in interest. Farm Credit Services Hearing Exhibit P (Debtors' "Affidavit of Negative Averment"). As the Creditors and the Chapter 12 Trustee stated in their Confirmation Objections and at the Confirmation Hearing, many of these issues were raised and responded to during the course of the state court proceedings. Moreover, certain Creditors made an effort during the course of this proceeding to respond to the Debtors' requests for documentation establishing the Creditors' standing in this case. The Debtors' willful refusal either to respond to such offers or to acknowledge the validity of documents when actually presented demonstrates the Debtors' bad faith in their dealings with creditors.

The Debtors' dealings with this Court at times also demonstrated a lack of candor. Debtor Carl Pertuset's testimony during hearings on the subjects of insurance coverage and his signatures on various loan documents was evasive at best, if not outright false. Moreover, the Debtors' refusal to testify at the Confirmation Hearing on issues relating to their Proposed Plan, ability to earn income and other relevant subjects is further indication that the Debtors are not being forthcoming with their creditors and this Court.

In summary, Chapter 12 bankruptcy is intended to give "family farmers facing bankruptcy a fighting chance to reorganize their debts and keep their land." *In re Knudsen,* 389 B.R. 643, 663 (N.D.Iowa 2008) (*citing Justice v. Valley National Bank,* 849 F.2d 1078, 1090 (8th Cir.1988) (quoting H.R. Rep. 554, 99th Cong.2d Sess., 48, reprinted 1986 U.S.Code Cong. & Admin. News 5249)). The Debtors have been given a "fighting chance" in bankruptcy on two occasions. Regrettably, the Debtors' actions demonstrate an abuse of the bankruptcy system as evidenced by a lack of fundamental fairness in the Debtors' dealings with creditors and this Court as expected by the Bankruptcy Code. Therefore, under the totality of the circumstances, this Court finds that cause exists to dismiss this case based on the Debtors' lack of good faith.

### E. *Two Year Bar to Refiling*

In addition to seeking dismissal of this case, Farm Credit Services asks this Court to bar the Debtors from filing bankruptcy under any Chapter of the Bankruptcy Code for a period of two years, which request was supported by the other creditors present at the Confirmation Hearing as well as by the Chapter 12 Trustee.

A court may dismiss a bankruptcy case with prejudice to refiling, pursuant to Sections 105(a) [21] and 349(a) [22] of

---

**21.** Section 105(a) of the Bankruptcy Code provides that a bankruptcy court "may issue any order ... that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

**22.** Section 349(a) of the Bankruptcy Code provides that "[u]nless the court, for cause, orders otherwise, the dismissal of a case under this title does not bar the discharge, in a later case under this title, of debts that were

the Bankruptcy Code, where there is sufficient cause. *See, e.g., Cusano v. Gene Klein, et al. (In re Cusano),* 431 B.R. 726, 737 (6th Cir.BAP); *Dietrich v. Nob–Hill Stadium Props.,* 2007 WL 579547 at *4–5, 2007 U.S.App. LEXIS 3591 at *14–15 (6th Cir. Feb. 15, 2007)("We conclude that the plain language of section 349(a) appears to allow a bankruptcy court to dismiss a bankruptcy petition with prejudice, permanently, if there is sufficient cause."). A court may impose a bar to refiling as warranted to prevent abuse of the bankruptcy system. *In re Cusano,* 431 B.R. at 736–37; *see also, In re Craighead,* 377 B.R. 648, 657 (Bankr.N.D.Cal.2007) ("Bankruptcy Code section 349 gives the bankruptcy court authority to dismiss a bankruptcy case with a bar preventing a debtor from re-filing in cases of abuse.").

█ This Court agrees that a two year bar to refiling is appropriate under the facts of this case to prevent further abuse of the bankruptcy system by the Debtors. The purpose of Chapter 12 of the Bankruptcy Code is to give family farmers a chance to reorganize their debts and keep their farms while preserving the fair treatment of creditors by moving Chapter 12 bankruptcy cases forward in an expeditious manner. *See, e.g., In re Knudsen,* 839 at 663; *In re Pretzer,* 96 B.R. at 793. The Debtors have been afforded two chances to reorganize their debts and save their farm over a collective period of greater than two years. The primary creditors who have been active in this case, as well as in the Debtors' previous Chapter 12 case, on the other hand, have not been paid for an extended period of time and have expended significant time and resources in seeking to enforce their asserted contractual and state law rights.

This Court sympathizes with the Debtors' desire to retain their family farm. As this Court stated at the January 5, 2012 Status Conference, this Court is mindful that the Debtors' home and livelihood are at risk in this proceeding. This Court was hopeful that the Debtors would work with their bankruptcy counsel and propose an amended plan of reorganization for creditors to consider prior to the Confirmation Hearing, a sentiment similarly echoed by Farm Credit Services and the Chapter 12 Trustee. While the Debtors may truly believe the theories they espouse in support of their position in this and their previous Chapter 12 bankruptcy case, as was argued by Attorney Hoskins at the Confirmation Hearing, the Debtors have been unable to proposed a confirmable plan and have been given a fair opportunity to pursue such arguments. Unfortunately, based on the Debtors' history, this Court has no doubt that the Debtors will continue to pursue these or similar theories in connection with yet another proposed plan rather than putting forth a plan founded on repaying their creditors from their farming operations within the parameters contemplated by Chapter 12 of the Bankruptcy Code. As such, this Court feels compelled to implement a bar to refiling to protect the integrity of the bankruptcy process and prevent further prejudice to creditors. *See In re Cusano,* 431 B.R. at 735 (affirming two year bar to refiling based on debtor filing three bankruptcy petitions in three years, the timing of such filings as relates to pending state court litigation, actions taken by the debtor *pro se* despite representation by counsel, failure to follow advice of counsel and failure to disclose assets).

This Court further finds that a two year bar, rather than some lesser time period, is warranted in this case. Given the Debt-

dischargeable in the case dismissed." 11 U.S.C. § 349(a).

ors' past record, this Court believes that the Debtors will reappear in this Court in short order if this Court were not to instate the requested two year bar to refiling. In the approximate 17 month period between the Bankruptcy Court's dismissal of the Debtors' previous Chapter 12 case and the filing of the Debtors' present Chapter 12 case, the Debtors appealed the Bankruptcy Court's order dismissing the Debtors' previous Chapter 12 case, filed a motion to stay and objection to the State Court's Foreclosure Judgment (as well as various motions to reconsider and miscellaneous additional notices and pleadings in the Foreclosure Action), and filed an appeal of the Foreclosure Judgment to the Ohio Fourth District Court of Appeals. This Court fully expects that the Debtors will once again turn to the bankruptcy court for protection if unsuccessful in state court. Accordingly, a refiling restriction of less than two years given the timing between the filing of the Debtors' previous bankruptcy case and the present case would not afford any meaningful relief to creditors or serve to curb what this Court finds to be an improper use of the bankruptcy process.

### F. *Motion to Withdraw as Counsel for Debtors*

Debtors' counsel, Attorney Hoskins, filed a Motion to Withdraw as Counsel shortly following the January 5, 2012 Status Conference. Attorney Hoskins states in his motion that he and the Debtors have "different case strategies" and have faced "on-going issues regarding cooperation and case objectives that necessitate Debtors' retention of like-minded legal counsel." Motion to Withdraw as Counsel at p. 1.

For the reasons stated on the record at the Confirmation Hearing and as set forth in the *Order Setting Hearing on Counsel for Debtors' Motion to Withdraw as Legal Counsel*, Attorney Hoskins was required to represent the Debtors in regards to all matters scheduled for hearing on January 25, 2012 to avoid delay or prejudice to either the Debtors or their creditors. Attorney Hoskins having so fulfilled his obligations at the Confirmation Hearing, and in light of this Court's dismissal of this case, this Court grants the Motion to Withdraw as Counsel effective as of the conclusion of the Confirmation Hearing.

### III. *Conclusion*

For the foregoing reasons:

A. The Debtors' Motion to Continue the Confirmation Hearing is DENIED;

B. Confirmation of the Proposed Plan is DENIED;

C. The Motions to Dismiss are GRANTED and this Chapter 12 case is hereby DISMISSED;

D. Debtors are barred from filing a petition for relief under any Chapter of the Bankruptcy Code for a period of two years from the date of entry of this Order;

E. The ASB Motion for Relief from Stay is DENIED as moot;

F. The Quality Car Motion for Adequate Protection is DENIED as moot; and,

G. The Motion to Withdraw as Counsel is GRANTED effective as of the conclusion of the Confirmation Hearing.

**IT IS SO ORDERED.**